823 P.2d 41

**STATE of Arizona, Respondent,**

v.

**Michael Terry SLEMMER, Petitioner.**

**No. CR–90–0103–PR.**

Supreme Court of Arizona,
En Banc.

Dec. 19, 1991.

Reconsideration Denied Feb. 4, 1992.*

---

* Zlaket, J., did not participate in the determination of this matter.

Navajo County Atty. by Thomas L. Wing, Holbrook, for respondent.

A. Michael Espino, Navajo County Public Defender by David N. Howarth and Glenn A. Franklin, Holbrook, for petitioner.

## OPINION

FELDMAN, Vice Chief Justice.

Michael Terry Slemmer (defendant) filed a petition for post-conviction relief, claiming he was entitled to a new trial because the jury that convicted him of assault with intent to commit murder was incorrectly instructed on the issue of self-defense. The trial court summarily dismissed his petition and denied his motion for reconsideration. The court of appeals held that the trial court properly denied relief. *State v. Slemmer*, 166 Ariz. 318, 802 P.2d 1017 (Ct.App.1990). We granted defendant's petition for review to determine whether the jury instruction constituted fundamental error under the rule of *State v. Hunter*, 142 Ariz. 88, 688 P.2d 980 (1984), and whether *Hunter* should apply retroactively to defendant's case. We have jurisdiction under article 6, § 5(3) of the Arizona Constitution and A.R.S. § 12–120.24.

## FACTS

Defendant was convicted of assault with intent to commit murder under A.R.S. § 13–248 after a jury trial in 1977.[1] At trial, he claimed self-defense and requested that the trial court instruct the jury as follows:

> If the evidence presented by the Defendant regarding his claim of self defense raises in your minds any reasonable doubt as to whether he was justified in shooting the victim, then you must find the Defendant not guilty.
>
> AUTHORITY: *Spence v. Territory*, 13 Ariz. 20, 108 P. 227 (1910).

Response to Petition for Post–Conviction Relief, filed Dec. 22, 1987, Exhibit A.

Grant Woods, Atty. Gen. by Ronald L. Crismon, Phoenix, and Dale K. Patton, Jr.,

---

1. A.R.S. § 13–248, prescribing punishment for "[a] person who assaults another with intent to commit murder," was later repealed, along with A.R.S. § 13–241, which defined assault. Laws 1977, ch. 142, § 4, effective October 1, 1977. *See infra* note 10.

The trial court refused the proffered instruction and gave instead the self-defense instruction defendant now challenges, which read:

> The defendant has offered evidence that he acted in self-defense. Self-defense requires that you find the defendant not guilty if the following three conditions are met:
>
> (1) The defendant reasonably believed he was in immediate danger of great bodily injury or death; and
>
> (2) The defendant acted solely because of this belief; and
>
> (3) The defendant used no more force than appeared reasonably necessary under the circumstances.

Supplement to Record, filed August 8, 1988. The court also gave the following general burden of proof instruction:

> The defendant's plea of "not guilty" means that the State must prove every part of the charge beyond a reasonable doubt.
>
> ... The law does not require a defendant to prove his innocence or to produce any evidence. The burden of proving the defendant guilty beyond a reasonable doubt rests upon the State. This burden never shifts throughout the trial.
>
> \*　\*　\*　\*　\*　\*
>
> The charge ... has three essential elements all of which must be proven by the state beyond a reasonable doubt.

*Id.*

Defendant did not argue on direct appeal that the trial court erred in giving these instructions. The only error raised on direct appeal concerning jury instructions was the trial court's failure to instruct the jury on lesser-included offenses. *See State v. Slemmer,* No. 1 CA–CR 3000 (Ariz.Ct. App. Oct. 19, 1978) (memorandum decision), at 2. The court of appeals affirmed defendant's conviction. *Id.* at 6–7.

Ten years later, defendant petitioned for post-conviction relief, claiming he was entitled to a new trial because of the trial court's "[f]ailure to give [an] adequate self-

defense instruction under [the] Arizona and Federal constitutions." Petition for Post-Conviction Relief, at 3. Defendant had not previously raised this issue but later did so because he believed there had been "[a] fundamental change in Arizona Constitution[al] Law (*Hunter,* etc.)." *Id.* at 4. The trial court denied relief under Rule 32, Ariz.R.Crim.P., 17 A.R.S. (hereinafter Rule ——), holding there had been no significant change in the law pertaining to self-defense. Minute Entry, March 1, 1988.

A divided court of appeals affirmed the denial of post-conviction relief. The court found that our holding in *Hunter* did not apply to the instructions given in this case. The court stated that *"Hunter* was not a change in the law" that would allow defendant to attack his conviction collaterally through Rule 32 proceedings. *Slemmer,* 166 Ariz. at 319, 802 P.2d at 1018. The court also concluded that, even if *Hunter* applied, the error was harmless in light of the trial court's general burden of proof instruction. *Id.* at 319–20, 802 P.2d at 1018–19.

In dissent, Judge Voss concluded that the instruction constituted fundamental error under the principle announced in *Hunter.* He also noted that in another case the court had held that *"Hunter* represented a significant change in the law, an exception to the general rule of preclusion, thereby allowing [defendant] to seek post conviction relief." *Id.* at 320, 802 P.2d at 1019 (discussing *State v. Garcia,* 152 Ariz. 245, 248, 731 P.2d 610, 613 (Ct.App.1986)).

## DISCUSSION

### A. Application of *Hunter*

■ In *Hunter,* we held that an instruction that misled the jury about the defendant's burden on the issue of self-defense was both reversible and fundamental error. 142 Ariz. at 90, 688 P.2d at 982. In that case, the challenged instruction, former Recommended Arizona Jury Instruction (RAJI) No. 4.01, read:

> If you decide the defendant's conduct was justified, you must find the defendant not guilty.

*Id.* at 89, 688 P.2d at 981. We found that the misleading effect of the instruction was not cured by the general burden of proof instruction, stating that if there was evidence of self-defense, "the burden on the state was then to disprove beyond a reasonable doubt that appellant acted in self-defense." *Hunter,* 142 Ariz. at 90, 688 P.2d at 982.

Although the challenged instruction did not use the same language as the *Hunter* instruction, we believe it had the same, if not more, potential for misleading the jury. Like the *Hunter* instruction, it failed adequately to inform the jury that, if the evidence raised the issue, the state was then required to prove beyond a reasonable doubt that defendant had not acted in self-defense. *See State v. Duarte,* 165 Ariz. 230, 232, 798 P.2d 368, 370 (1990) (recommending alternate instruction). We therefore reject the court of appeals' conclusion that the present instruction did not constitute fundamental error under *Hunter.*

 Nor do we accept the court of appeals' conclusion that any error was rendered harmless by the general instruction that the state had the burden of proving the charge against defendant beyond a reasonable doubt. First, as in *Hunter,* the jury could easily have concluded that the state's burden of proving each element beyond a reasonable doubt did not apply to the issue of self-defense. This is especially true in the present case because the instruction stated that "defendant has offered" evidence of self-defense, and that "[s]elf-defense requires" that certain "conditions" relating to a defendant's conduct and mental state "are met." The jury could have believed that, in fact, defendant had the burden of proof because he was the one offering evidence on these "conditions."

Second, we find that the general burden of proof instruction given in this case has even less curative power than the instruction in *Hunter.* The general instruction in *Hunter* "provided that the state must prove all of its *case* against the defendant and must prove the defendant guilty beyond a reasonable doubt." 142 Ariz. at 90, 688 P.2d at 982 (emphasis added). We held that the jury might interpret this instruction as excluding the issue of self-defense from the *case* against the defendant, thereby eliminating the state's burden of proof beyond a reasonable doubt. In the present case, the court instructed the jury that "the State must prove every part of the *charge* beyond a reasonable doubt" and that "[t]he *charge* ... has three essential elements all of which must be proven by [the] State beyond a reasonable doubt." Supplement to Record, filed Aug. 8, 1988 (emphasis added). None of these "essential elements" involved self-defense. *Id.* Compared with the instruction in *Hunter,* we believe the jury would be even less likely to think the issue of self-defense was part of the state's *charge.* The jury could easily deduce that the state's burden of proof, therefore, did not apply to the self-defense issue.

We recently refused to conduct a fundamental error analysis of a *Hunter*-type instruction given at the defendant's request. *State v. Diaz,* 168 Ariz. 363, 813 P.2d 728 (1991). We held that by specifically requesting the instruction five years *after* we had condemned its use in *Hunter,* defense counsel invited the error and could not profit from it on appeal. *Id.* at 365, 813 P.2d at 730. We distinguished *State v. Tittle,* 147 Ariz. 339, 710 P.2d 449 (1985), and *Garcia,* 152 Ariz. 245, 731 P.2d 610, which applied the doctrine of fundamental error, because the defendants in those cases requested the instruction *before* we decided *Hunter. Diaz,* 168 Ariz. at 365–66, 813 P.2d at 730–31.

Unlike *Diaz,* this is not a case in which a defendant requested an instruction years after its condemnation. Defendant was tried seven years before *Hunter* was decided. Moreover, defendant did not request the instruction given. Instead, he requested an instruction that is very close to one we have since recommended on self-defense.[2] In any event, defendant's prof-

---

2. In *Duarte,* we noted the persistence of trial courts in giving instructions that contain the

language we condemned in *Hunter.* 165 Ariz. at

fered instruction was much closer to a correct statement of the law than the instruction given at his trial.

For the foregoing reasons, we conclude that the trial court's self-defense instruction constituted fundamental error under *Hunter*. We must now determine whether defendant's failure to raise the issue on direct appeal precludes post-conviction relief.

## B. Retroactivity of *Hunter*

### 1. *Preclusion*

The standards governing post-conviction relief are provided in Rule 32, which generally precludes relief on grounds that were or could have been raised and adjudicated on appeal.[3] However, there is no preclusion when "[t]here has been a significant change in the law applied in the process which led to the petitioner's conviction or sentence, and there are sufficient reasons to allow retroactive application of the changed legal standard." Rule 32.1(g). Thus, we determine preclusion under Rule 32 on the basis of our retroactivity analysis. We turn, therefore, to that question.

### 2. *Is the rule of* State v. Hunter *retroactively effective and applicable to convictions that became final before* Hunter *and are now before the courts on collateral attack?*

#### a. Federal retroactivity principles

*Hunter* held that the standard instruction on self-defense improperly shifted the

burden of proof, was fundamental error, and therefore was not waived by defendant's failure to object at trial. *Hunter*, however, was a direct appeal, while the present case is a collateral attack on a judgment that became final seven years prior to *Hunter*. Therefore, the question is whether the *Hunter* rule applies both to cases before us on direct appeal and those that became final before *Hunter* was decided.

The United States Supreme Court has considered the principles of retroactivity in a variety of cases over the last twenty-five years. In complex and sometimes seemingly contradictory opinions, the Court has established some basic principles in its most recent decisions.

First, the Court has determined that new decisions applying "well established constitutional principle[s] to govern a case which is closely analogous to those which have been previously considered in the prior case law" should generally be applied retroactively, even to cases that have become final and are before the court on collateral proceedings.[4] *Yates v. Aiken,* 484 U.S. 211, 216, 108 S.Ct. 534, 537, 98 L.Ed.2d 546 (1988) (quoting *Desist v. United States*, 394 U.S. 244, 263, 89 S.Ct. 1030, 1041, 22 L.Ed.2d 248 (1969) (Harlan, J., dissenting)).[5] The Court gives these decisions complete retroactivity because they do not materially alter the criminal proce-

---

232, 798 P.2d at 370. We cautioned trial courts against continuing to use that language, stating:

> Trial courts should substitute the following:
>
> If evidence was presented that raises the issue of self-defense [or some other justification], then the state has the burden of proving beyond a reasonable doubt that the defendant did not act in self-defense. If the state fails to carry this burden, then you must find the defendant not guilty of the charge.

This language reflects the original purpose of the instruction—to inform the jury that acquittal is *mandatory* if the state fails to disprove beyond a reasonable doubt a properly raised issue of self-defense. *Id.*

**3.** Rule 32.2(a) provides that:

> A petitioner will not be given relief under this rule based upon any ground:

> (1) Still raisable on direct appeal under Rule 31 or on post-trial motion under Rule 24;
> (2) Finally adjudicated on the merits on appeal or in any previous collateral proceeding;
> (3) Knowingly, voluntarily and intelligently not raised at trial, on appeal, or in any previous collateral proceeding.

**4.** "By final we mean where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed" or a petition for certiorari finally denied. *Linkletter v. Walker,* 381 U.S. 618, 622 n. 5, 85 S.Ct. 1731, 1734 n. 5, 14 L.Ed.2d 601 (1965).

**5.** Justice Harlan's retroactivity analysis in *Desist* has now been mostly adopted as the majority view of the Court. *Yates,* 484 U.S. at 216, 217 and n. 3, 108 S.Ct. at 537, 538 and n. 3.

dural rules. *United States v. Johnson,* 457 U.S. 537, 547–48, 102 S.Ct. 2579, 2586–87, 73 L.Ed.2d 202 (1982). In essence, these decisions simply explain and apply the rules that actually existed at the time the case was first decided.[6]

■ Second, all *new rules or principles* announced for the conduct of criminal cases generally must be applied retroactively, *but only* to cases not yet final in the state and federal court systems. *See Griffith v. Kentucky,* 479 U.S. 314, 320–22, 107 S.Ct. 708, 711–13, 93 L.Ed.2d 649 (1987) (reviewing cases on retroactivity). *Griffith* held that the peremptory challenge rule of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), applied retroactively to cases not yet final. It stated that "at a minimum, all defendants whose cases were still pending at the time of the law-changing decision should be entitled to invoke the new rule." *Griffith,* 479 U.S. at 322, 107 S.Ct. at 712 (citing *Johnson,* 457 U.S. at 545, 102 S.Ct. at 2584); *see also Johnson,* 457 U.S. at 545 n. 9, 102 S.Ct. at 2584 n. 9 (citing and listing cases). This retroactivity principle applies even when the new rule constitutes a "clear break" with the past and was a rule relied on by law enforcement officers, overrules past precedent of the court, or changes practices sanctioned in prior cases. *Griffith,* 479 U.S. at 324–28, 107 S.Ct. at 714–16.

■ Third, decisions overruling precedent and establishing a new rule are "almost automatically nonretroactive" to cases that are final and are before the court only on collateral attack. *Allen v. Hardy,* 478 U.S. 255, 258, 106 S.Ct. 2878, 2880, 92 L.Ed.2d 199 (1986) (quoting *Solem v. Stumes,* 465 U.S. 638, 646, 104 S.Ct. 1338, 1343, 79 L.Ed.2d 579 (1984)). In *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Court

examined the difference in retroactivity rules on direct and collateral review and discussed the purposes of habeas review. The Court recognized that

the threat of habeas serves as a necessary incentive for trial and appellate judges throughout the land to conduct their proceedings in a manner consistent with established principles. In order to perform this deterrence function, the habeas court need only apply the constitutional standards that prevailed at the time the original proceedings took place.

*Id.* at 306, 109 S.Ct. at 1073 (quoting *Desist,* 394 U.S. at 262–63, 89 S.Ct. at 1041 (Harlan, J., dissenting)). The Court also emphasized that "[a]pplication of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential" to our criminal justice system. *Id.* 489 U.S. at 309, 109 S.Ct. at 1074. *See generally* Bender, *The Retroactive Effect of an Overruling Constitutional Decision:* Mapp v. Ohio, 110 U.PA.L.REV. 650, 655–60 (1962) (discussing retroactivity to cases on collateral appeal).

Thus, in post-conviction proceedings, *Allen* refused to apply the *Batson* peremptory challenge rule to a case that had become final before *Batson* was decided. Likewise, *Teague* refused to apply the rule in *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) (sixth amendment's fair cross-section requirement), on collateral review.

The *Allen* analysis is illuminating for the case at bench. In considering whether the *Batson* rule would be applied to Allen on habeas review of murder convictions, the Court considered three factors traditionally applied in retroactivity decisions: the purpose served by the new rule, the extent of reliance by law enforcement officials on the

---

6. *Yates* illustrates this point. In *Yates,* the trial court instructed the jury to apply a mandatory presumption of intent to the state's proof of certain elements of an offense. This burden-shifting instruction violated due process. *See Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). The Court gave the *Francis* ruling com-

plete retroactivity, applying it to Yates, whose case came before the Court on collateral attack of a final conviction. *Yates,* 484 U.S. at 217, 108 S.Ct. at 538. The Court recognized that "*Francis* was merely an application of the principle that governed [its] decision in *Sandstrom v. Montana,* which had been decided before petitioner's trial took place." *Id.*

old rule, and the effect of retroactivity on the administration of justice. *Allen,* 478 U.S. at 258, 106 S.Ct. at 2880. In discussing the first factor, the Court stated:

> [Full r]etroactive effect is "appropriate where a new constitutional principle is designed to enhance the accuracy of criminal trials," but the fact that a rule may have some impact on the accuracy of a trial does not compel a finding of retroactivity. Instead, the purpose to be served by the new standard weighs in favor of [full] retroactivity where the standard "goes to the heart of the truth-finding function."

*Id.* at 259, 106 S.Ct. at 2880 (citations omitted). The Court then noted that while the *Batson* rule may have some effect on truthfinding, it was designed "to serve multiple ends." *Id.*

The Court believed the second two factors strongly favored non-retroactivity. With respect to the second, it stated:

> *Batson* not only overruled the [prior] evidentiary standard ..., it also announced a new standard that significantly changes the burden of proof imposed on both defendant and prosecutor. There is no question that prosecutors, trial judges, and appellate courts ... justifiably have relied on the [old] standard.

*Id.* at 260, 106 S.Ct. at 2881. As to the third factor, the Court believed that applying *Batson* to collateral attacks would seriously impair the administration of justice by requiring "trial courts to hold hearings, often years after the conviction became final, to determine [the required evidentiary factors regarding peremptory challenges].... Many final convictions therefore would be vacated, with retrial 'hampered by problems of lost evidence, faulty memory, and missing witnesses.' " *Id.* (quoting *Solem,* 465 U.S. at 650, 104 S.Ct. at 1345).

There are two exceptions in which a new principle will be given *full* retroactive effect. The primary exception is for new principles whose major purpose "is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials." [7] *Johnson,* 457 U.S. at 544, 102 S.Ct. at 2584 (citing *Williams v. United States,* 401 U.S. 646, 653, 91 S.Ct. 1148, 1152, 28 L.Ed.2d 388 (1971) (plurality opinion)). These principles include the requirement that the state prove all elements of a crime beyond a reasonable doubt. *See Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977); *Ivan V. v. City of New York,* 407 U.S. 203, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972); *see also State v. Rendon,* 161 Ariz. 102, 776 P.2d 353 (1989). The question of whether a new principle's primary purpose is to enhance the trial court's truthfinding function is, however, inherently one of degree. *Johnson v. New Jersey,* 384 U.S. 719, 728–29, 86 S.Ct. 1772, 1778, 16 L.Ed.2d 882 (1966). With this analytical framework in mind, we turn to the present case.

### b. Adoption of federal analysis

The first question, of course, is whether we should follow the federal retroactivity analysis in our consideration of the state issues raised. The federal analysis is, after all, quite complex and, in many ways, difficult to apply, as noted by even a cursory reading of the decisions cited in this opinion and many others mentioned in the federal cases. Assuming that *Hunter* articulated a principle of state constitutional law rather than, or in addition to, one of federal constitutional law, we would be free to establish and apply our own retroactivity analysis.[8] *See Pool v. Superior*

---

7. The other exception is for new rules placing "certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe." *Teague,* 489 U.S. at 307, 109 S.Ct. at 1073 (quoting *Mackey v. United States,* 401 U.S. 667, 692, 91 S.Ct. 1160, 1180, 28 L.Ed.2d 404 (1971) (Harlan, J., separate opinion)). This exception, however, is not relevant to our decision here.

8. *Hunter* does not mention any constitutional provision and is remarkable for its silence on the question of whether the fundamental error had its origins in the constitution. Given, however, that *Hunter* deals with fundamental error and a burden-shifting instruction, one might assume it involves a constitutional issue. *See Garcia,* 152 Ariz. at 247, 250 n. 4, 731 P.2d at 612, 615 n. 4. Furthermore, burden-shifting vi-

*Court,* 139 Ariz. 98, 108, 677 P.2d 261, 271 (1984). However, here, as in *State v. Hurley,* 154 Ariz. 124, 131, 741 P.2d 257, 264 (1987), we believe such diversity would be mischievous and a disservice to principles of federalism. The law regarding retroactivity is complex enough without requiring counsel and trial judges to apply different retroactivity rules, depending on whether the substantive decision is grounded on state or federal constitutional principles—especially when many decisions are grounded on both. Given the supremacy of the United States Supreme Court on federal issues and its current explication of the law, we think public policy presently requires that we adopt and apply the federal retroactivity analysis to decisions of state constitutional law.

### c. Application to the present case

█ We first conclude that *Hunter* was, in the truest sense, a "clear break" from the past and a "new rule." Of course, the prohibition against burden-shifting is an old and settled principle. The *Hunter* instruction, however, was part of the stock instructions used by our trial courts. It was part of the Recommended Arizona Jury Instructions (RAJI) prepared by a committee of this court and approved by us for use in our trial courts.[9] *See Hunter,* 142 Ariz. at 89, 688 P.2d at 981; *see also Duarte,* 165 Ariz. at 231–32, 798 P.2d at 369–70.

As part of RAJI, the *Hunter* instruction was used in innumerable cases in all of our trial courts and was relied on by trial judges, prosecutors, and even defense counsel. *See, e.g., Diaz,* 168 Ariz. 363, 813 P.2d 728; *Tittle,* 147 Ariz. 339, 710 P.2d 449; and *Garcia,* 152 Ariz. 245, 731 P.2d 610 (cases in which defense counsel requested the instruction). *Hunter* disapproved a practice that this court arguably had sanctioned by the administrative order adopting RAJI and thus overturned "a longstanding and widespread practice to which this [court had] not spoken [in terms of legal propriety], but which a near-unanimous body of lower court authority ha[d] expressly approved." *Johnson,* 457 U.S. at 551, 102 S.Ct. at 2588.

We conclude, therefore, that *Hunter* was indeed a "sharp break" with the past. *Milton v. Wainwright,* 407 U.S. 371, 381 n. 2, 92 S.Ct. 2174, 2180 n. 2, 33 L.Ed.2d 1 (1972) (Stewart, J., dissenting). It does more than merely apply settled principles to new facts, and thus it is not automatically fully retroactive to cases on collateral review. *See Yates,* 484 U.S. at 217, 108 S.Ct. at 538.

█ We must, therefore, use the three factors enumerated in *Allen* to decide whether to give the *Hunter* rule complete retroactivity. Under *Allen,* we first examine the purpose of the *Hunter* rule to determine its impact on the accuracy of criminal trials. *Hunter* established the rule that giving an improper burden-shifting instruction regarding self-defense is fundamental error, holding that "[t]he instructions did not make it clear that ... the burden on the state was ... to disprove

---

olates the due process clause of the United States Constitution when it deals with an element of the crime. *Sandstrom v. Montana,* 442 U.S. 510, 524, 99 S.Ct. 2450, 2459, 61 L.Ed.2d 39 (1979). However, *Hunter* does not involve the state's due process obligation to prove the elements of the crime but, rather, the burden-shifting of the state's obligation to prove the absence of justification for defendant's actions. As noted in *Garcia,* 152 Ariz. at 250 n. 4, 731 P.2d at 615 n. 4, the United States Supreme Court has yet to decide whether the due process clause prohibits the state from allocating to the defendant the burden of establishing justification. *See Hankerson,* 432 U.S. at 240 n. 6, 97 S.Ct. at 2344 n. 6. The Court has held, however, that the due process clause permits the state to allocate the burden of establishing the defense

of insanity to the defendant. *See Patterson v. New York,* 432 U.S. 197, 206, 97 S.Ct. 2319, 2325, 53 L.Ed.2d 281 (1977); *see also State v. Fletcher,* 149 Ariz. 187, 192, 717 P.2d 866, 871 (1986) (upholding constitutionality of Arizona's new insanity statute).

9. The RAJI publication contained the following introduction:

> The Arizona Supreme Court expresses a qualified approval and recommends the use of the Arizona Uniform Jury Instructions unless the trial judge is satisfied that there is a compelling legal reason for modifying or refusing to give an instruction.

RAJI, Adoption by Supreme Court (1974). The comment did not constitute an endorsement that the instructions were free from error.

beyond a reasonable doubt that appellant acted in self-defense." 142 Ariz. at 90, 688 P.2d at 982. Thus, the instructional error before us in *Hunter* and in the present case does go to the truthfinding function and is significant. However, the ambiguous statement regarding the burden of proof on what is at least similar to an affirmative defense,[10] does not imperil the accuracy of the verdict to such an extent as to go "to the heart of the truthfinding function."[11] *Allen,* 478 U.S. at 259, 106 S.Ct. at 2880.

We have noted elsewhere that fundamental error may be a sufficient reason for retroactive application of a rule condemning burden-shifting instructions. *Rendon,* 161 Ariz. at 104, 776 P.2d at 355. In *Rendon* the trial court erred in defining an element of the crime. The facts in *Rendon* called that very element into question, presenting a high probability that Rendon was convicted of a crime he did not commit. *Id.* We do not believe, however, that fundamental error regarding, in effect, a self-defense justification instruction is so vital to the criminal process as to automatically require retroactivity as "the only method of protecting the integrity of the process." *Id.* at 105, 776 P.2d at 356. We must therefore consider the remaining factors of retroactivity analysis described in *Allen.*

■ Examining the second *Allen* factor, we recognize that, as noted above, *Hunter* was a clear break with the past. The instruction we declared as fundamental error in *Hunter* had been given conditional approval by this court and was relied on by lawyers and judges. Although *Hunter* established no new rule of substantive law, it was clearly a new rule in the sense that it upset a longstanding practice

sanctioned by publication under the aegis of this court. *See Duarte,* 165 Ariz. at 232, 798 P.2d at 370 (citing cases in which the improper instruction was given even after *Hunter* was decided). Under these circumstances, there was a "compelling" reliance by judicial and law enforcement officials that supports non-retroactivity for cases on collateral attack. *Allen,* 478 U.S. at 260, 106 S.Ct. at 2881.

■ Finally, we believe that giving *Hunter* full retroactive application would have a significant and extremely harmful effect on the administration of justice. Here, as in *Allen,* applying the *Hunter* rule to a collateral attack on a final judgment would require our courts to vacate numerous final convictions long since entered and to retry defendants "hampered by problems of lost evidence, faulty memory and missing witnesses." *Allen,* 478 U.S. at 260, 106 S.Ct. at 2881 (quoting *Solem,* 465 U.S. at 650, 104 S.Ct. at 1348).

Balancing all of these factors, we conclude that for the *Hunter* rule, the proper choice, difficult though it is, is to follow the principle articulated by Justice Harlan:

> Habeas corpus always has been a *collateral* remedy, providing an avenue for upsetting judgments that have become otherwise final. It is not designed as a substitute for direct review. The interest in leaving concluded litigation in a state of repose, that is, reducing the controversy to a final judgment not subject to further judicial revision, may quite legitimately be found by those responsible for defining the scope of the writ to outweigh in some, many, or most instances the competing interest in readjudicating convictions according to all legal

---

10. Defendant was convicted of assault with intent to commit murder under A.R.S. § 13–248. Under A.R.S. § 13–241, assault included "unlawful attempt" as an element of the crime. *See State v. Tinghitella,* 108 Ariz. 1, 491 P.2d 834 (1971). Thus, in this case, the lack of a justification, including self defense, was *technically* but not traditionally an element of the crime charged. *See supra* note 1.

11. As the Supreme Court stated in *Teague,* rules going to the heart of the truthfinding function

"are best illustrated by recalling the classic grounds for issuance of a writ of habeas corpus—that the proceeding was dominated by mob violence; that the prosecutor knowingly made use of perjured testimony; or that a conviction was based on a confession extorted from the defendant by brutal methods." 489 U.S. at 313, 109 S.Ct. at 1077 (citing *Rose v. Lundy,* 455 U.S. 509, 544, 102 S.Ct. 1198, 1216–1217, 71 L.Ed.2d 379 (1982) (Stevens, J., dissenting)).

standards in effect when a habeas petition is filed.

*Teague,* 489 U.S. at 306, 109 S.Ct. at 1072 (quoting *Mackey v. United States,* 401 U.S. 667, 682–83, 91 S.Ct. 1160, 1175, 28 L.Ed.2d 404 (1971) (Harlan, J., separate opinion)).

## CONCLUSION

When a new principle of law is articulated, a defendant whose conviction has become final may seek relief under Rule 32. That defendant is insulated from the rules of finality and preclusion when, as the rule contemplates, there "has been a significant change in the law applied in the process which led" to conviction or sentence. Whether relief may be obtained under Rule 32 then depends on the question of retroactive application of the new principle of law. That question is to be determined by the standards contained in this opinion. Applying those standards to this case, we conclude that the *Hunter* principle is to be applied retroactively to all cases that had not become final at the time *Hunter* was decided.

*Hunter* is not to be applied retroactively to cases, such as the present one, in which the conviction had become final before *Hunter* was decided. To the extent *State v. Garcia,* 152 Ariz. 245, 731 P.2d 610, holds to the contrary, that case is disapproved.

The court of appeals opinion is vacated. The trial court's order denying relief under Rule 32 is affirmed.

GORDON, C.J., and CAMERON, MOELLER and CORCORAN, JJ., concur.