SUPREME COURT OF ARIZONA
En Banc

|  |  |  |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
|  | ) | No. CR-02-0031-PC |
| Plaintiff, | ) |  |
|  | ) | Maricopa County Superior |
| v. | ) | Court |
|  | ) | No. CR 91-92648 |
| ROBERT CHARLES TOWERY, | ) |  |
|  | ) | CONSOLIDATED WITH |
| Defendant. | ) |  |

STATE OF ARIZONA, ) Arizona Supreme Court
) No. CR-02-0022-PC
Plaintiff, )
) Pima County Superior
v. ) Court
) No. CR-44903
ERIC OWEN MANN, )
) CONSOLIDATED WITH
Defendant. )

STATE OF ARIZONA, ) Arizona Supreme Court
) No. CR-02-0038-PC
Plaintiff, )
) Maricopa County Superior
v. ) Court
) No. CR 1991-090926
JAMES ERIN McKINNEY, )
) CONSOLIDATED WITH
Defendant. )

STATE OF ARIZONA, ) Arizona Supreme Court
) No. CR-02-0146-PC
Plaintiff, )
) Mohave County Superior
v. ) Court
) No. CR-13057
ROGER WAYNE MURRAY, )
)
Defendant. ) **O P I N I O N**
)

Petition for Review from the Superior Court of Maricopa County
No. CR 91-92648
The Honorable Cheryl K. Hendrix
The Honorable James H. Keppel
AFFIRMED

_____

Maynard, Murray, Cronin, Erickson & Curran, P.L.C.          Phoenix
    by      Daniel D. Maynard
    and     Jennifer A. Sparks
Waterfall, Economidis, Caldwell, Hanshaw &
Villamana, P.C.                                              Tucson
    by      James W. Stuehringer
Attorneys for Towery


Janet Napolitano, Arizona Attorney General                  Phoenix
    by      Kent E. Cattani, Chief Counsel, Capital Litigation
            Section
    and     Robert L. Ellman, Assistant Attorney General
    and     Dawn M. Northrup, Assistant Attorney General
Attorneys for State of Arizona


Office of Federal Public Defender                           Phoenix
    by      Fredric F. Kay
    and     Michael L. Burke
Attorneys for Amicus Curiae Federal Public Defender

_____

Petition for Review from the Superior Court of Pima County
No. CR-44903
The Honorable John F. Kelly
AFFIRMED

_____

Law Office of David Lipartito, P.C.                         Tucson
    by      David Lipartito
Maynard, Murray, Cronin, Erickson & Curran, P.L.C.          Phoenix
    by      Daniel D. Maynard
    and     Jennifer A. Sparks
Waterfall, Economidis, Caldwell, Hanshaw &
Villamana, P.C.                                             Tucson
    by      James W. Stuehringer
Attorneys for Mann


Janet Napolitano, Arizona Attorney General                 Phoenix
    by      Kent E. Cattani, Chief Counsel, Capital Litigation
            Section

2

    and    Robert L. Ellman, Assistant Attorney General
    and    John Pressley Todd, Assistant Attorney General
Attorneys for State of Arizona

Office of Federal Public Defender                        Phoenix
    by    Fredric F. Kay
    and   Michael L. Burke
Attorneys for Amicus Curiae Federal Public Defender

_____

Petition for Review from the Superior Court of Maricopa County
                   No. CR 1991-090926
             The Honorable Steven D. Sheldon
                        AFFIRMED

_____

Jamie McAlister Law Offices, LLC                         Phoenix
    by    Jamie McAlister
Meyers, Taber & Meyers, P.C.                             Phoenix
    by    Jess A. Lorona
Maynard, Murray, Cronin, Erickson & Curran, P.L.C.      Phoenix
    by    Daniel D. Maynard
    and   Jennifer A. Sparks
Waterfall, Economidis, Caldwell, Hanshaw &
Villamana, P.C.                                          Tucson
    by    James W. Stuehringer
Attorneys for McKinney

Janet Napolitano, Arizona Attorney General              Phoenix
    by    Kent E. Cattani, Chief Counsel, Capital Litigation
          Section
    and   Robert L. Ellman, Assistant Attorney General
    and   Monica B. Klapper, Assistant Attorney General
Attorneys for State of Arizona

Office of Federal Public Defender                        Phoenix
    by    Fredric F. Kay
    and   Michael L. Burke
Attorneys for Amicus Curiae Federal Public Defender

_____

Petition for Review from the Superior Court of Mohave County
                   No. CR-13057
             The Honorable James E. Chavez
                        AFFIRMED

_____

Waterfall, Economidis, Caldwell, Hanshaw &

3

Villamana, P.C.                                           Tucson
    by      James W. Stuehringer
Maynard, Murray, Cronin, Erickson & Curran, P.L.C.        Phoenix
    by      Daniel D. Maynard
    and     Jennifer A. Sparks
Attorneys for Murray

Janet Napolitano, Arizona Attorney General                Phoenix
    by      Kent E. Cattani, Chief Counsel, Capital Litigation
            Section
    and     Robert L. Ellman, Assistant Attorney General
    and     Monica B. Klapper, Assistant Attorney General
Attorneys for State of Arizona

Office of Federal Public Defender                         Phoenix
    by      Fredric F. Kay
    and     Michael L. Burke
Attorneys for Amicus Curiae Federal Public Defender

_____


McGregor, Vice Chief Justice

¶1      These consolidated actions present the question whether *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428 (2002) (*Ring II*),[1] which holds that a jury must decide whether aggravating circumstances exist in capital cases, applies retroactively to those defendants whose cases have become final. We conclude that *Ring II* does not apply retroactively to final cases.

## I.

¶2      Separate juries found, beyond a reasonable doubt, that Murray, Mann, Towery, and McKinney committed first degree murder.

_____

[1]      In *State v. Ring*, 200 Ariz. 267, 279-80 ¶ 44, 25 P.3d 1139, 1151-52 (2001) (*Ring I*), guided by *Walton v. Arizona*, 497 U.S. 639, 110 S. Ct. 3047 (1990), this court held that Arizona's former capital sentencing scheme, in which a judge decided whether aggravating circumstances existed, comported with the Sixth Amendment.

4

In each petitioner's case, the trial judge conducted a sentencing hearing to determine whether aggravating circumstances existed. In each case, the judge found that the state proved, beyond a reasonable doubt, the presence of at least one aggravating circumstance and that the mitigating circumstances, if any, were not sufficiently substantial to call for leniency. Accordingly, Murray, Mann, Towery, and McKinney all received death sentences. This court affirmed each death sentence on direct review. *State v. Murray*, 194 Ariz. 373, 982 P.2d 1287 (1999); *State v. Mann*, 188 Ariz. 220, 934 P.2d 784 (1997); *State v. Towery*, 186 Ariz. 168, 920 P.2d 290 (1996); *State v. McKinney*, 185 Ariz. 567, 917 P.2d 1214 (1996).

**¶3**      Subsequently, Murray, Mann, Towery, and McKinney each filed a motion for post-conviction relief, arguing in part that their sentences violated their Sixth Amendment right to a jury trial because a judge, rather than a jury, determined the presence of aggravating circumstances.  After the superior courts denied relief, each filed a petition for review with this court claiming various grounds for relief.  We consolidated the petitioners' cases and granted review only on the issue of *Ring II*'s applicability to the petitioners' cases.  We have jurisdiction under Article VI, Section 5.3 of the Arizona Constitution and Rule 32.9 of the Arizona Rules of Criminal Procedure.

## II.

¶4      In *Ring II*, the United States Supreme Court held that Arizona's former capital sentencing scheme[2] violated a defendant's right to a jury trial under the Sixth Amendment because a judge, rather than a jury, found facts necessary to expose a defendant to a death sentence.  536 U.S. at ___, 122 S. Ct. at 2443.  The Court declared that "[c]apital defendants, no less than non-capital defendants . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment."  *Id.* at ___, 122 S. Ct. at 2432.[3]  The petitioners request that this court vacate their death sentences because a judge, rather than a jury, made the factual findings needed to establish aggravating circumstances.

¶5      The petitioners began these proceedings by filing a petition for post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure.  Generally, Rule 32.2 precludes relief

---

[2]      Arizona Revised Statutes (A.R.S.) § 13-703 (2001) *amended by* 2002 Ariz. Sess. Laws, 5th Spec. Sess., ch. 1, § 1.

[3]      Recognizing that under Arizona law aggravating circumstances "operate as 'the functional equivalent of an element of a greater offense,'" the Court held that Arizona's capital sentencing scheme violates the Sixth Amendment.  536 U.S. at __, 122 S. Ct. at 2443 (quoting *Apprendi v. New Jersey,* 530 U.S. 466, 494 n.19, 120 S. Ct. 2348, 2365 n.19 (2000)).  *Apprendi* held that a jury must find beyond a reasonable doubt "any fact that increases the penalty for a crime beyond the prescribed statutory maximum." 530 U.S. at 490, 120 S. Ct. at 2362-63.  *Ring II* applies *Apprendi*'s interpretation of the Sixth Amendment to Arizona's capital sentencing scheme.

for claims that were raised or could have been raised at trial or on appeal, as is true of this argument. Ariz. R. Crim. P. 32.2. An exception exists, however, when "[t]here has been a significant change in the law that *if determined to apply to the defendant's case* would probably overturn the defendant's conviction or sentence." Ariz. R. Crim. P. 32.1.g (emphasis added). Accordingly, we must first determine whether the *Ring II* decision applies retroactively to the petitioners' sentences.

## III.

¶6 Several principles have shaped the United States Supreme Court's retroactivity jurisprudence, which Arizona courts have adopted and follow. *State v. Slemmer*, 170 Ariz. 174, 181-82, 823 P.2d 41, 49 (1991) (deciding to adopt and to apply federal retroactivity analysis). New constitutional rules apply to cases on direct review. *Griffith v. Kentucky*, 479 U.S. 314, 322, 107 S. Ct. 708, 713 (1987). The Constitution, however, neither forbids nor demands retroactive application of new rules to cases that have become final. Generally, under *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060 (1989) (plurality), and *Allen v. Hardy*, 478 U.S. 255, 106 S. Ct. 2878 (1986) (per curiam), new constitutional rules do not apply retroactively.

## A.

¶7 Determining whether a rule applies retroactively under the *Teague* framework involves a three-part analysis. *United States*

7

*v. Sanders*, 247 F.3d 139, 146-47 (4th Cir. 2001). First, the court must determine whether the petitioner's case has become final. The second step essentially involves two inquiries: Is the rule that the petitioner asserts a new rule, and is the new rule substantive or procedural? Petitioners whose cases have become final may seek the benefit of new substantive rules. *Bousley v. United States*, 523 U.S. 614, 620, 118 S. Ct. 1604, 1610 (1998) (explaining that *Teague* does not apply to substantive rules). A new constitutional rule of criminal procedure, however, usually does not apply retroactively to collateral proceedings. *Teague*, 489 U.S. at 310, 109 S. Ct. at 1075. Therefore, the court must finally determine whether the new rule fits within one of two narrow exceptions that permit retroactive application of a new rule of criminal procedure.

**B.**

¶8     A defendant's case becomes final when "a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." *Griffith*, 479 U.S. at 321 n.6, 107 S. Ct. at 712 n.6. The trial courts entered a judgment of conviction and a death sentence for each of these petitioners. This court affirmed each petitioner's death sentence on his automatic direct appeal. *Murray*, 194 Ariz. 373, 982 P.2d 1287; *Mann*, 188 Ariz. 220, 934 P.2d 784; *Towery*, 186 Ariz. 168, 920 P.2d 290; *McKinney*, 185 Ariz. 567, 917 P.2d 1214. The United States

8

Supreme Court denied petitions for writs of certiorari filed by Mann, Towery, and Murray. *Mann v. Arizona,* 522 U.S. 895, 118 S. Ct. 238 (1997) (mem.); *Towery v. Arizona*, 519 U.S. 1128, 117 S. Ct. 985 (1997) (mem.); *Murray v. Arizona*, 519 U.S. 874, 117 S. Ct. 193 (1996) (mem.). McKinney did not seek review from the Supreme Court, and his time for doing so has expired. This court has issued the direct appeal mandate for each petitioner. Accordingly, each petitioner's case has become final.

## C.

¶9     Because the petitioners' cases are final, we next examine whether *Ring II* announced a new rule and whether the rule is substantive or procedural. A new rule "breaks new ground or imposes a new obligation on the States or the Federal Government." *Teague*, 489 U.S. at 301, 109 S. Ct. at 1070. Stated differently, "a case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Id.* Clearly, the *Ring II* decision breaks new ground because it expressly overruled *Walton v. Arizona*, 497 U.S. 639, 110 S. Ct. 3047 (1990). *Ring II*, 536 U.S. at ___, 122 S. Ct. at 2443. In *Walton*, the Court rejected Walton's argument that the Sixth Amendment demands that a jury, rather than a judge, find the presence of aggravating circumstances and upheld Arizona's capital sentencing statute, the same statute as that struck down in *Ring II.* 497 U.S. at 647-49, 110 S. Ct. at 3054-55. Because *Walton*

9

governed at the time the petitioners' cases became final, precedent obviously did not dictate the holding of *Ring II.* Moreover, *Ring II*'s holding that a jury must decide whether any aggravating circumstances exist also imposes a new burden on the state. Thus, we conclude that *Ring II* constitutes a new rule.

¶10     Because *Ring II* announced a new rule, determining whether it applies retroactively largely turns on whether *Ring II* established a substantive or procedural rule. *See Santana-Madera v. United States*, 260 F.3d 133, 138 (2d Cir. 2001). Substantive rules determine the meaning of a criminal statute. *See Bousley*, 523 U.S. at 620, 118 S. Ct. at 1610. Decisions announcing substantive rules often address the criminal significance of certain facts or the underlying prohibited conduct. *See Curtis v. United States*, 294 F.3d 841, 843 (7th Cir. 2002). In contrast, procedural decisions set forth fact-finding procedures to ensure a fair trial. *Sanders*, 247 F.3d at 147.

¶11     Petitioners assert that *Ring II* announced a substantive rule because it determined the essential elements of capital murder in Arizona. They argue that *Ring II* refined the definition of an element of capital offenses, which is unquestionably a substantive decision. We disagree. Although the Supreme Court recognized that Arizona's aggravating factors operate as the functional equivalent of an element of a greater offense, *Ring II* did not announce a substantive rule.

10

¶12     *Ring II* extends *Apprendi*'s interpretation of the Sixth Amendment to the capital context.  536 U.S. at __, 122 S. Ct. at 2432.  The Supreme Court specifically described *Apprendi* as a procedural decision: "The substantive basis for New Jersey's enhancement is thus not at issue; the adequacy of New Jersey's *procedure* is."  *Apprendi*, 530 U.S. at 475, 120 S. Ct. at 2354 (emphasis added).  The Court explained that New Jersey's policy behind the hate crime sentence enhancement "has no . . . bearing on this *procedural* question," that is, whether the Sixth Amendment requires a jury to determine if the defendant committed the crime motivated by hate.  *Id.*  (emphasis added).  Courts addressing *Apprendi*'s retroactivity effect consistently conclude that *Apprendi* announced a procedural rule.  *E.g., Curtis*, 294 F.3d at 843; *McCoy v. United States*, 266 F.3d 1245, 1256 (11th Cir. 2001); *Sanders*, 247 F.3d at 147; *United States v. Richardson*, 214 F. Supp. 2d 844, 846 (N.D. Ill. 2002).  Logic dictates that if *Apprendi* announced a procedural rule, then, by extension, *Ring II* did also.  *Cannon v. Mullin*, 297 F.3d 989, 994 (10th Cir. 2002) (explaining that the Tenth Circuit's conclusion "that *Apprendi* announced a rule of criminal procedure forecloses Cannon's argument that *Ring* [*II*] announced a substantive rule").

¶13     In addition, *Ring II* changed neither the underlying conduct that the state must prove to establish that a defendant's crime warrants death nor the state's burden of proof; it affected

11

neither the facts necessary to establish Arizona's aggravating factors nor the state's burden to establish the factors beyond a reasonable doubt. Instead, *Ring II* altered *who* decides whether any aggravating circumstances exist, thereby altering the fact-finding procedures used in capital sentencing hearings.

**D.**

¶14    In the interest of finality, new rules of criminal procedure do not apply retroactively under the *Teague* framework unless (1) the new rule "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe," *Teague*, 489 U.S. at 307, 109 S. Ct. at 1073 (internal quotation marks and citation omitted) or (2) the rule announced is a watershed rule of criminal procedure that is "implicit in the concept of ordered liberty." *Id.* at 311, 109 S. Ct. at 1076 (internal quotation marks and citation omitted). Arizona courts are especially concerned with the finality of criminal cases because the Arizona Constitution requires courts to protect the rights of victims of crime by ensuring a "prompt and final conclusion of the case after the conviction and sentence." Ariz. Const. art. II, § 2.1(A)(10).

¶15    *Ring II* clearly does not implicate the first *Teague* exception. "*Ring* [*II*] did not forbid either the criminalization of any conduct or the punishment in any way of any class of defendants." *Colwell v. Nevada*, 59 P.3d 463, 473 (Nev. 2002); *see*

12

*also United States v. Sanchez-Cervantes*, 282 F.3d 664, 668 (9th Cir. 2002) (stating that *Apprendi* does not implicate the first *Teague* exception); *Sanders*, 247 F.3d at 148 (same).

¶16     Accordingly, *Ring II* does not apply retroactively unless it falls under *Teague*'s second exception. Petitioners argue that *Ring II* announced a watershed rule of criminal procedure because requiring a jury to determine the existence of aggravating circumstances improves the accuracy of the trial. We disagree.

¶17     The *Teague* watershed exception actually requires two showings. First, "[i]nfringement of the rule must *seriously* diminish the likelihood of obtaining an accurate conviction." *Tyler v. Cain*, 533 U.S. 656, 665, 121 S. Ct. 2478, 2484 (2001) (internal quotation marks and citation omitted) (emphasis added). In addition, "the rule must alter our understanding of the *bedrock procedural elements* essential to the fairness of a proceeding." *Id.* *Ring II* does not satisfy either prong of the watershed exception.

¶18     To fall within the second *Teague* exception, *Ring II* must impose a "procedure[] without which the likelihood of an *accurate conviction* is seriously diminished." *Teague*, 489 U.S. at 313, 109 S. Ct. at 1077 (emphasis added). Requiring a jury to determine the existence of aggravating circumstances does not "increase[] the reliability of the guilt-innocence determination at all because" *Ring II* does not affect a jury's determination of guilt or

13

innocence. *United States v. Moss*, 252 F.3d 993, 999 (8th Cir. 2001) (concluding that *Apprendi* does not qualify under the second *Teague* exception). Rather, *Ring II* prohibits a validly convicted defendant from being exposed to the death penalty unless a jury finds the existence of certain aggravating circumstances. *See id.*

¶19 Moreover, we doubt that the pre-*Ring II* sentencing procedure *seriously* diminished the likelihood of a fair sentencing hearing. *Ring II* merely shifts the fact-finding duty from an impartial judge to an impartial jury. *See United States v. Mora*, 293 F.3d 1213, 1219 (10th Cir. 2002) (concluding that *Apprendi* does not qualify under the second *Teague* exception); *Sanders*, 247 F.3d at 148 (same). We have no reason to believe that impartial juries will reach more accurate conclusions regarding the presence of aggravating circumstances than did an impartial judge. *See Illinois v. Gholston*, 772 N.E.2d 880, 886 (Ill. App. Ct. 2002) (concluding *Apprendi* is not retroactive and stating it is unlikely a jury would have a "substantially different interpretation of the brutal and heinous nature of the crimes committed than the circuit judge"); *see also Bilzerian v. United States*, 127 F.3d 237, 241 (2d Cir. 1997) (holding that *United States v. Gaudin,* 515 U.S. 506, 115 S. Ct. 2310 (1995), which held that materiality is a jury question, is not retroactive); *United States v. Shunk,* 113 F.3d 31, 37 (5th Cir. 1997)(same).

¶20 Even if *Ring II* seriously improved the reliability of a

14

defendant's conviction, the decision still would not apply retroactively to final cases. To come within the purview of the second *Teague* exception, a rule "must not only improve accuracy, but also alter our understanding of the *bedrock procedural elements* essential to the fairness of a proceeding." *Sawyer v. Smith*, 497 U.S. 227, 242, 110 S. Ct. 2822, 2831 (1990) (explaining that preserving accuracy "looks only to half of" *Teague*'s second exception). Only a "small core of rules requiring observance of those procedures that . . . are implicit in the concept of ordered liberty" reach this watershed magnitude. *Graham v. Collins*, 506 U.S. 461, 478, 113 S. Ct. 892, 903 (1993) (internal quotation marks and citation omitted). In other words, a rule "must implicate the fundamental fairness of the trial." *Teague*, 489 U.S. at 312, 109 S. Ct. at 1076.

¶21    We agree with the Fifth Circuit Court of Appeals that "one can easily envision a system of 'ordered liberty' in which certain elements of a crime can or must be proved to a judge, not to the jury." *Shunk*, 113 F.3d at 37 (holding that *Gaudin* does not apply retroactively). Indeed, several Supreme Court opinions support the conclusion that the right to a jury determination on the existence of aggravating circumstances does not involve a procedure so "implicit in the concept of ordered liberty" as to constitute a watershed rule. *Teague*, 489 U.S. at 311, 109 S. Ct. at 1076.

¶22    In *Ring II*, the Court explained that "[t]he Sixth Amendment jury trial right . . . does not turn on the relative rationality, *fairness*, or efficiency of potential factfinders." 536 U.S. at __, 122 S. Ct. at 2442 (emphasis added). Moreover, the Court declined to make *Duncan v. Louisiana*, 391 U.S. 145, 88 S. Ct. 1444 (1968), retroactive. *DeStefano v. Woods,* 392 U.S. 631, 633, 88 S. Ct. 2093, 2095 (1968) (per curiam). *Duncan* held that the basic Sixth Amendment right to a jury trial applies to the states through the Fourteenth Amendment. 391 U.S. at 147-58, 88 S. Ct. at 1446-52. Although *DeStefano* preceded *Teague*, the Court's reasoning remains relevant under the *Teague* framework. The Court stated, "We would not assert, however, that every criminal trial – or any particular trial – held before a judge alone is unfair or that a defendant may never be as fairly treated by a judge as he would be by a jury." *DeStefano*, 392 U.S. at 634-35, 88 S. Ct. at 2095 (quoting *Duncan*, 391 U.S. at 158, 88 S. Ct. at 1452).

¶23    The Supreme Court's decision in *Neder v. United States,* 527 U.S. 1, 119 S. Ct. 1827 (1999), further supports our conclusion that *Ring II* does not constitute a watershed rule of criminal procedure. A jury convicted Neder of violating various tax, mail, and fraud statutes. *Id.* at 6, 119 S. Ct. at 1832. The judge, however, did not instruct the jury on the element of materiality, and the judge actually made the necessary finding of materiality. *Id.* After Neder's conviction but before Neder's case became final,

16

the Court held in *United States v. Gaudin*, 115 S. Ct. 2310, 515 U.S. 506 (1995), that a jury must determine the question of materiality. In *Neder*, the Supreme Court recognized that the judge's failure to instruct and submit the element to the jury violated the Sixth Amendment but held that the error was subject to a harmless error analysis. *Id.* at 8-15, 119 S. Ct. at 1833-37. Moreover, holding that the failure to submit an element to a jury did not constitute a structural error, the Court necessarily concluded that "an instruction that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair." *Id.* at 9, 119 S. Ct. at 1833.

¶24  The petitioners' cases are similar to Neder's in that the judge did not submit the aggravating circumstance element to the jury. Consequently, it would be inconsistent with *Neder* to now find that *Ring II* is a watershed rule that "implicate[s] the fundamental fairness of the trial." *Teague*, 489 U.S. at 312, 109 S. Ct. at 1076; *see, e.g., Sanders*, 247 F.3d at 148-49 (relying on *Neder* to determine that *Apprendi* is not a watershed rule of criminal procedure); *United States v. Gibbs*, 125 F. Supp. 2d 700, 705-07 (E.D. Pa. 2000) (same).

¶25  The new rule of criminal procedure announced in *Ring II* thus does not meet either of the exceptions to *Teague*'s general rule that new rules do not apply retroactively to cases that have become final.

17

¶26     Although most courts have adopted *Teague*'s plurality analysis to determine whether a new rule applies retroactively, Arizona also follows the analysis of *Allen v. Hardy*, 478 U.S. 255, 106 S. Ct. 2878 (1986) (per curiam). *Slemmer*, 170 Ariz. at 182-83, 823 P.2d at 49-50.  Under the *Allen* framework, courts weigh three factors to determine if a rule applies retroactively to final cases: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards."  478 U.S. at 258, 106 S. Ct. at 2880 (quoting *Solem v. Stumes*, 465 U.S. 638, 643, 104 S. Ct. 1338, 1341 (1984)).

¶27     We regard *DeStefano* as particularly persuasive because the Court applied these same three factors to conclude that *Duncan,* which applied the Sixth Amendment right to a jury to the states through the Fourteenth Amendment, did not apply retroactively. *DeStefano*, 392 U.S. at 633-34, 88 S. Ct. at 2095-96.  If the basic right to a jury trial does not apply retroactively, then a right to a jury determination of aggravating circumstances that function essentially as elements of a greater offense also does not apply retroactively.

¶28     With respect to the purpose the new rule serves, the Court explained, "[r]etroactive effect is 'appropriate where a new

18

constitutional principle is designed to enhance the accuracy of criminal trials.'" *Allen*, 478 U.S. at 259, 106 S. Ct. at 2880 (quoting *Solem*, 465 U.S. at 643, 104 S. Ct. at 1342). We concluded in our preceding *Teague* analysis that the *Ring II* holding is not designed to improve accuracy. *See supra* ¶¶ 18-19. Thus, the first *Allen* factor does not support applying *Ring II* retroactively.

¶29 Similarly, the justice system's good faith reliance on *Walton v. Arizona* weighs against retroactivity. In *Walton*, the Court expressly approved of Arizona's system in which the judge, not the jury, determined the presence of aggravating circumstances. 497 U.S. at 647-49, 110 S. Ct. at 3054-55. Moreover, the Court reaffirmed *Walton*'s continued viability in *Apprendi*. 530 U.S. at 496-97, 120 S. Ct. at 2366. Certainly the Arizona justice system acted in good faith in applying the holding of *Walton* until the Court overruled its decade-old decision.

¶30 Finally, applying *Ring II* retroactively would greatly disrupt the administration of justice. As recognized previously, courts must protect a victim's rights by ensuring "prompt and final conclusion of the case after the conviction and sentence." Ariz. Const. art. II, § 2.1(A)(10). Arizona has approximately ninety prisoners on death row whose cases have become final and who received a sentence based upon the aggravating circumstances found by the trial judge and affirmed on appeal. Conducting new sentencing hearings, many requiring witnesses no longer available,

would impose a substantial and unjustified burden on Arizona's administration of justice. As in *DeStefano*, "[t]he values implemented by the right to jury trial would not measurably be served by requiring retrial of all persons" sentenced to death "by procedures not consistent with the Sixth Amendment right to jury trial." 392 U.S. at 634, 88 S. Ct. at 2095. Moreover, vacating those prisoners' sentences without substantial justification would violate this court's duty under the Victims' Bill of Rights. Accordingly, we conclude that *Ring II* does not apply retroactively under *Allen.*

**IV.**

¶31      For the foregoing reasons, we affirm each trial court's denial of post-conviction relief for the petitioners on the basis of *Ring II.*

_____
Ruth V. McGregor
Vice Chief Justice

CONCURRING:

_____
Charles E. Jones, Chief Justice

_____
Rebecca White Berch, Justice

_____
Michael D. Ryan, Justice

20

Feldman, Justice, specially concurring

**¶32**      I agree with the result and the analysis except insofar as the court relies on its interpretation of *Neder v. United States,* 527 U.S. 1, 119 S. Ct. 1827 (1999).  *See* opinion at ¶¶ 23-24.

_____
Stanley G. Feldman, Justice (Retired)