**UNITED STATES of America, Plaintiff–Respondent,**

v.

**Marlo Dion PITTMAN, Defendant–Petitioner.**

**Nos. CV 00–449–MA, CR 96–293–MA.**

United States District Court, D. Oregon.

Nov. 15, 2000.

Marc D. Blackman, Ransom Blackman LLP, Portland, OR, for Defendant–Petitioner.

Michael Brown, Assistant U.S. Attorney, Portland, OR, for U.S.

## OPINION & ORDER

MARSH, District Judge.

On August 9, 1996, defendant/petitioner Marlo Dion Pittman entered a guilty plea to a single count information charging him with distribution of cocaine base in violation of Title 21 U.S.C. § 841(a)(1). It is undisputed that neither the information nor the factual basis for the guilty plea made any reference to a specific drug quantity. However, the plea agreement and plea petition stated that the defendant would be subject to a statutory minimum sentence of 10 years, a maximum term of life and a $4,000,000 fine. At sentencing, the defendant challenged the application of a 2–level gun enhancement under USSG 2D1.1 and sought a downward departure on two grounds: (1) a claimed unfairness relative to the severity of treatment of crack versus powder cocaine; and (2) overstatement of his criminal history score under USSG § 4A1.3. I accepted the defendant's objection to the gun enhancement, rejected his challenge to the severity of Congress' treatment of crack cocaine, and granted his request for a downward departure based upon the overstatement of his criminal history score. In so holding, I reduced defendant's criminal history category one level from a VI to a V and

sentenced him to 140 months, the low end of the sentencing range.

Defendant now seeks habeas corpus relief pursuant to 28 U.S.C. § 2255 claiming that his conviction and/or sentence should be set aside because the information failed to recite drug quantity and on grounds that his guilty plea was neither knowing nor voluntary since he was unaware of the fact that the government should carry the burden of proving drug quantity beyond a reasonable doubt. His initial petition was premised upon the Supreme Court's decision in *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). In *Jones*, the Court held that higher statutory penalties found within the federal carjacking statute, 18 U.S.C. § 2119, set forth additional elements of an offense which must be alleged in an indictment and proven beyond a reasonable doubt. *Jones*, 526 U.S. at 232–39, 119 S.Ct. 1215. *Compare Almendarez–Torres v. United States*, 523 U.S. 224, 230, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) (finding that recidivism's typical status as a sentencing factor weighed against construing statute provision as creating a separate element of the crime rather than a sentencing factor); and *Castillo v. United States*, 530 U.S. 120, 120 S.Ct. 2090, 2093–94, 147 L.Ed.2d 94 (2000)(use of a machine gun not a typical sentencing factor).

The defendant has since supplemented his petition and seeks to rely upon the Supreme Court's recent decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a

reasonable doubt." *Id.* at 2362–63. In *Jones v. United States, Almendarez–Torres* and *Castillo*, the Court's analysis focused upon the structure of the statute in issue, the legislative history, and whether courts historically considered a particular fact during the sentencing phase. *Apprendi* extended the reasoning and analysis of these decisions based upon Constitutional principles: the Fifth and Fourteenth Amendments due process rights and the Sixth Amendment right to a jury trial.

In *Apprendi*, the Supreme Court overturned a sentencing scheme that allowed a state judge to enhance a defendant's penalty beyond the prescribed statutory maximum upon finding, by a preponderance of the evidence, that the defendant "acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation, or ethnicity," *Apprendi*, 530 U.S. at ——, 120 S.Ct. at 2351 (quoting N.J.S.A. § 2C:44–3(e)). The Supreme Court reversed, holding that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 2363–64.

In *United States v. Nordby*, 225 F.3d 1053 (9th Cir.2000), the Ninth Circuit held that *Apprendi* applies to federal drug convictions such that any enhanced penalty based upon drug quantity under § 841(b) must be premised upon a factual finding beyond a reasonable doubt. *See also United States v. Doggett*, 230 F.3d 160 (5th Cir. 2000) (applying *Apprendi* to drug quantity challenge on direct appeal); *United States v. Aguayo–Delgado*, 220 F.3d 926 (8th Cir.2000), *pet. for cert. filed* (Oct. 16, 2000).[1] Although the Ninth Circuit did not

---

1. The Fifth Circuit expressly held that *Apprendi* did not affect the Supreme Court's prior holding in *Edwards v. United States*, 523 U.S. 511, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998), that the judge determines the kinds and amounts of the controlled substances when imposing sentences within the statutory range. *See also United States v. Meshack*, 225

F.3d 556, 575–76 (noting "the *Apprendi* majority expressly declined to reverse an earlier opinion allowing a judge to determine by a preponderance whether an enhancement should apply, instead limiting the case's 'holding to cases that do not involve the imposition of a sentence more severe than the statutory maximum for the offense established by the

expressly address the issue, several courts have held that while *Apprendi* applies to any factual determination used to justify application of a higher statutory maximum penalty, *Apprendi* does not apply to a district court's determination of sentencing guideline issues and any factual determination under the guidelines that increases a sentence **within** the applicable statutory maximum. In *Doggett*, the Fifth Circuit explained that drug quantity for any sentence beyond a statutory maximum penalty was an element of the offense which must be established beyond a reasonable doubt, while the drug quantity determination for all other purposes remained an issue for the sentencing court under the preponderance of the evidence standard. *Accord United States v. Angle*, 230 F.3d 113 (4th Cir. 2000); *Hernandez v. United States*, 226 F.3d 839, 841 (7th Cir.2000); *United States v. Aguayo–Delgado*, 220 F.3d 926 (8th Cir.2000). The court based its conclusion, in part, upon a determination that *Apprendi* did nothing to overrule the Court's prior holding in *Edwards v. United States*, 523 U.S. 511, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998), that the sentencing judge properly determines drug quantity and relevant conduct when imposing a sentence within the relevant sentencing range. *Doggett*, 230 F.3d 160, 166.

The Ninth Circuit has not yet decided the issue of whether *Apprendi* may be applied retroactively to habeas corpus petitions and this is an issue of first impression in this district.[2] Several Circuits have held that *Apprendi* may not be applied retroactively to successive habeas corpus petitions because the Supreme Court has not declared *Apprendi* to be retroactive. *Hernandez v. United States*, 226 F.3d 839, 840 (7th Cir.2000); *In Re Joshua*, 224 F.3d 1281, 1282 (11th Cir.2000); and *Sustache–Rivera v. United States*, 221 F.3d 8, 15 (1st Cir.2000), *pet. for cert. filed* (Oct. 23, 2000). These courts have reasoned that the language of successive petition provision of the Anti–Terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2255[3] mandates that the Supreme Court actually hold that a new rule is retroactive before it can be applied retroactively by lower courts. *See also Rodriguez v. Superintendent*, 139 F.3d 270 (1st Cir.1998) ("AEDPA does not codify *Teague*. To the contrary, its plain language instructs that only new rules rendered retroactive on collateral review 'by the Supreme court' may inure to the benefit of habeas petitioners ... [the] AEDPA ... invests the Court with sole authority to make such declarations.").

The parties have not cited, nor have I found any authority extending the holdings of these decisions to an initial § 2255 petition. Further, the Supreme Court has

jury's verdict.' *Id.* at 2361 n. 13 (discussing *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67(1986))").

**2.** I found only one published federal decision holding that *Apprendi* should be applied retroactively on collateral review: *United States v. Murphy*, 109 F.Supp.2d 1059 (D.Minn. 2000). For the reasons discussed in this opinion, I disagree with that court's conclusion.

**3.** The portion of § 2255 addressing successive petitions provides as follows: "A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—(1) newly discovered evidence ... or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."

The portion of § 2255 addressing the timeliness of initial petitions contains similar language, requiring filing within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review ..."

I note that one Circuit has held that *Apprendi* may be raised by initial petition, but not by a successive petition based upon the slightly different wording relative to recognition of retroactivity. *Rodgers v. United States*, 229 F.3d 704(8th Cir.2000). The court followed the reasoning of the Seventh, Eleventh and First Circuits only insofar as they apply to successive petitions.

continued to apply the retroactivity analysis of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) to initial habeas corpus petitions after the effective date of the AEDPA, *see e.g. O'Dell v. Netherland*, 521 U.S. 151, 157, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997), as has the Ninth Circuit, as discussed more fully below.

Under *Teague*, as a threshold matter, the court must first determine if the rule in question is "new." Then, a habeas corpus petitioner who seeks to set aside his conviction or sentence based upon a Supreme Court decision announcing a "new" procedural rule must establish that the rule falls within one of two exceptions.[4] The general principle announced in *Teague* is that new procedural rules should not be applied retroactively primarily out of respect for the doctrine of finality. *Id.* at 307, 109 S.Ct. 1060. If it is determined that a new rule exists, it should be applied retroactively only in two limited instances: (1) if the new rule "places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe ..." or (2) "if it requires the observance of those procedures

that are implicit in the concept of ordered liberty." *Id.* at 305, 109 S.Ct. 1060 (cites omitted).[5]

The *Teague* analysis is a "threshold issue" that must be decided before reaching the merits of the petitioner's claims. *Jones v. Gomez*, 66 F.3d 199, 201 (9th Cir.1995), *cert. denied*, 517 U.S. 1143, 116 S.Ct. 1437, 134 L.Ed.2d 559 (1996).

 Following the Ninth Circuit's recent decision in *Jones v. Smith*, 231 F.3d 1227 (9th Cir. 2000), there can no longer be any dispute in this Circuit that *Apprendi* announced a "new" rule for purposes of *Teague*. "Under either definition (breaking new ground or imposing new obligation on the government), *Apprendi* certainly established a new rule ..." *Id.* at \*6, ——.[6] *See also, United States v. Rogers*, 228 F.3d 1318 (11th Cir.2000) (explaining why *Apprendi* constitutes a "new" rule). In *Jones v. Smith*, the Ninth Circuit applied *Apprendi* to a state petitioner's claim that his conviction was unconstitutional based upon a variance between the indictment and the charge actually submitted to the jury. The court nevertheless held that *Apprendi* should not be applied retroactively because the "new

**4.** There is no dispute that *Apprendi* presents a question of retroactive application of a new procedural rule. *Teague's* limitation on collateral review applies only to procedural rules. *United States v. Benboe*, 157 F.3d 1181 (9th Cir.1998).

**5.** Under the second exception, the Court held that it was combining "the accuracy element of the *Desist* version of the second exception with the *Mackey* requirement that the procedure at issue must implicate the fundamental fairness of the trial." The Court's prior decisions in *Mackey v. United States*, 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) and *Desist v. United States*, 394 U.S. 244, 89 S.Ct. 1048, 22 L.Ed.2d 248 (1969) both involved application of the exclusionary rules under the Fourth and Fifth Amendments. Both cases relied, in part, upon a finding that retroactive application would make little sense since there was no longer a need to deter unlawful police investigatory tactics and because exclusion of the challenged evidence would not promote accuracy and tended to show that the cases did not involve actual innocence.

**6.** At a minimum, *Apprendi*, as applied to the requirement that statutory sentencing enhancements must be determined by a jury beyond a reasonable doubt, constituted a novel application of an old rule. Prior to *Apprendi*, every Circuit Court in the country considered drug quantity penalties under § 841(b) to be sentencing factors for a judge to determine based upon a preponderance standard of proof. *United States v. Gibbs*, 190 F.3d 188 (3rd Cir.1999), *cert. denied*, —— U.S. ——, 120 S.Ct. 969, 145 L.Ed.2d 840 (2000); *United States v. Lindia*, 82 F.3d 1154, 1160–61 (1st Cir.1996); *United States v. Deisch*, 20 F.3d 139, 146 (5th Cir.1994).

While not expressly overruling the preponderance standard as applied to drug quantity determinations, the Ninth Circuit recently cautioned that sentencing courts must also "consider the margin of error" when estimating drug quantity. *United States v. Scheele*, 231 F.3d 492 (9th Cir.2000).

rule" (that an indictment must charge all elements of an offense) neither altered the type of conduct subject to criminal sanction, nor constituted a "watershed rule of criminal procedure ... implicit in the concept of ordered liberty (as) an absolute prerequisite to a fair trial." *Id.* at *8, ——. Thus, to the extent that the petitioner seeks to set aside his conviction based upon the fact that his indictment failed to allege a specific drug quantity, his claim fails under *Jones v. Smith* because *Apprendi* cannot be retroactively applied to challenge alleged indictment deficiencies. I note, however, that there is absolutely no question that this defendant was aware of the drug quantities being asserted by the government in his case. The defendant's plea petition specifically acknowledged the applicability of a ten-year mandatory minimum sentence and a potential life maximum penalty. Further, at sentencing, the defendant raised no factual dispute regarding drug quantity. Thus, to the extent the defendant seeks to challenge his conviction based upon a due process notice assertion, his claim would also fail on the merits.

*Jones v. Smith* did not involve the issues directly raised in *Apprendi* and the remaining issues in the instant case: that of the viability of a conviction in which application of a statutory sentencing enhancement was decided by a judge under a preponderance of the evidence standard rather than by a jury under a reasonable doubt standard. The Ninth Circuit took pains to limit its holding in *Jones v. Smith* to the particular issue raised with the appeal: that of a discrepancy between an information and the charge actually submitted to the jury. The parties have not cited, nor am I aware of any Supreme Court or Ninth Circuit authority in which the retroactivity of a new rule announced in a Supreme Court decision has been addressed in piecemeal fashion. Prior

Ninth Circuit decisions applying *Teague* to new Supreme Court rules have done so on an all or nothing basis. *See e.g. Jones v. Gomez,* 66 F.3d 199 (9th Cir.1995), *cert. denied,* 517 U.S. 1143, 116 S.Ct. 1437, 134 L.Ed.2d 559 (1996); *Harmon v. Marshall,* 69 F.3d 963 (9th Cir.1995). Thus, I could simply conclude that the petitioner's *Apprendi* claims in this case are barred because the Ninth Circuit has held that *Apprendi* should not be applied retroactively on collateral review in *Jones v. Smith.*

It is unclear whether the practice of considering new Supreme Court procedural rules on a single rather than piecemeal basis has been deliberate or simply dictated by the fact that prior new rules have not generally involved divisible issues. At least one Circuit has adopted and applied such a piecemeal approach in a similar context. In *United States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), the Supreme Court held that materiality is an element of a charge of making false statements in federal loan documents in violation of 18 U.S.C. § 1001 and, as such, materiality must be submitted to a jury and proven beyond a reasonable doubt.[7] Following *Gaudin,* the Second Circuit analyzed the retroactive application of *Gaudin* under *Teague* in two distinct contexts: (1) whether a judicial rather than a jury determination of materiality was a new rule requiring retroactive application; *United States v. Bilzerian,* 127 F.3d 237 (2d Cir.1997), *cert. denied,* 527 U.S. 1021, 119 S.Ct. 2365, 144 L.Ed.2d 770 (1999); and (2) whether application of the "beyond a reasonable doubt" standard in lieu of a preponderance standard should apply retroactively. *United States v. Mandanici, Jr.,* 205 F.3d 519 (2d Cir.), *cert. denied,* —— U.S. ——, 121 S.Ct. 190, 148 L.Ed.2d 132 (2000). In both instances, the court held that the new rules announced in *Gaudin* were not "watershed"

---

**7.** The Ninth Circuit had already previously held that materiality was an essential element of a § 1001 charge that must be submitted to a jury and thus, the retroactivity of *Gaudin* has not been an issue in this Circuit. *See United States v. Boone,* 951 F.2d 1526, 1544 (9th Cir.1991).

principles that should be applied retroactively to cases on collateral review. *See also United States v. Shunk,* 113 F.3d 31, (5th Cir.1997) (holding *Gaudin* not retroactive under *Teague* )[8]; *United States v. Swindall,* 107 F.3d 831 (11th Cir.1997) (same).

█ Case law is clear that the determination of the retroactive application of a new Supreme Court rule cannot depend upon the facts of a particular case. A new rule announced by the Supreme Court will either be retroactive as to all cases pending collateral review or to none. While I would stop here, the Ninth Circuit's decision in *Jones v. Smith* and the Second Circuit's decision in *Mandanici* lead me to take an alternate course and examine if a "new rule" announced by the Supreme Court may have more than one facet that perhaps should be analyzed separately.

Here, because the petitioner's conviction was premised upon his own guilty plea, his claim rests upon the assertion that his plea was involuntary because he was misinformed regarding the government's burden of proof. The petitioner acknowledges that the advice that he received at the time of his plea was accurate under then existing law: i.e. that drug quantity would be determined by the judge at the time of sentencing. Petitioner claims that had he known that the law would have required that the government prove drug quantity to a jury beyond a reasonable doubt, he would not have entered a guilty plea and would have exercised his right to a jury trial. Petitioner's claim invokes two aspects of the *Apprendi* decision: (1) the right to have a jury, rather than a judge, determine a fact (drug quantity) triggering higher statutory maximum penalties; and (2) the right to such a factual determination proven beyond a reasonable doubt rather than by a preponderance of the evidence. If they apply retroactively, these two "new rules" apply with equal

force to cases that arise from a conviction based upon a jury verdict; the fact that the conviction in this case is premised upon a guilty plea is of no import.

The Ninth Circuit's decision in *Jones v. Smith* establishes that the *Apprendi* decision presents a new rule subject to the *Teague* analysis. However, *Jones v. Smith* has not yet determined whether *Apprendi* should be applied retroactively insofar as it announces a new rule relative to the two issues raised with this petition relative to the identity of the factfinder and the standard of proof applied to the sentence enhancing element.

The petitioner does not contend that the first *Teague* exception relative to noncriminal acts applies. Thus, the sole issue is whether the fact that the petitioner entered a plea not knowing that the government should have born the burden of proving drug quantity beyond a reasonable doubt constitutes the type of "watershed" rule(s) triggering retroactive application. In *Teague,* the Court explained that this narrow exception should be limited to those procedures implicating "fundamental fairness" or which are "central to an accurate determination of innocence or guilt." *Teague,* 489 U.S. at 312, 109 S.Ct. 1060.

In *Mandanici,* the Second Circuit noted that the Supreme Court has repeatedly "underscored the narrowness of the second Teague exception." 205 F.3d at 528. The Second Circuit examined eleven new rules announced by the Supreme Court and analyzed under the *Teague* framework and noted that in all eleven cases, the Court held that the rule at issue should not be applied retroactively. *Id.* (citations omitted). The right to counsel is a "watershed" rule subject to retroactive application. *See Id.* (discussing Supreme Court's example of *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) as the type of rule that fits within

---

**8.** The Fifth Circuit had held that materiality was a pure question of law and thus, there was no evidentiary burden applicable to the

trial judge's determination. *United States v. Hausmann,* 711 F.2d 615, 617 (5th Cir.1983).

the "watershed" exception); and *Bell v. Hill,* 190 F.3d 1089 (9th Cir.1999) (right to counsel relative to making a motion for new trial), *cert. denied,* —— U.S. ——, 120 S.Ct. 1269, 146 L.Ed.2d 219 (2000). The Ninth Circuit has held that a trial court's failure to instruct the jury as to any of the elements of the charge submitted to the jury was an issue of fundamental fairness that must be applied retroactively, assuming that the rule was "new." *Harmon v. Marshall,* 69 F.3d 963 (9th Cir.1995). The court was careful to condition its holding by expressly emphasizing twice that the case did "not involve the failure to instruct on a single element of an offense." *Id.* at 963, 967.

New rules held not to constitute watershed developments include the right of a defendant to challenge the race-based exclusion of jurors, *Jones v. Gomez,* 66 F.3d 199 (9th Cir.1995), a defendant's right to inform a sentencing jury that he is ineligible for parole under certain circumstances, *O'Dell,* 521 U.S. at 167, 117 S.Ct. 1969, a defendant's right not to have a jury consider certain invalid aggravating circumstances, *Lambrix v. Singletary,* 520 U.S. 518, 539–40, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997), or the failure to instruct a jury that it could not convict a defendant if it found a mitigating mental state. *Gilmore v. Taylor,* 508 U.S. 333, 345–46, 113 S.Ct. 2112, 124 L.Ed.2d 306 (1993).

■ I find that the two new rules announced in *Apprendi* that: (1) a jury, rather than a judge, must determine facts supporting a statutory sentencing enhancement and (2) that this determination must be made beyond a reasonable doubt—are not the type of "watershed" rules implicating fundamental fairness and thus, requiring retroactive application on collateral review. First, I find that the new *Apprendi* rules do not directly relate to the accuracy of the conviction or sentence. Like the application of *Gaudin* to

convictions for making false statements in federal loan applications, the factual inquiry and determinations were made; they were simply made by a different factfinder. Further, the fact that the application of a different standard of review might lead to different results is insufficient. In *Mackey v. U.S.* 401 U.S. 667, 91 S.Ct. 1160, 28 L.Ed.2d 404 , the Supreme Court expressly rejected a claim that the mere "probability" that a different result would be reached by application of a new rule was sufficient to trigger retroactive application. 401 U.S. at 672, 91 S.Ct. 1163.

On these principles, I agree with the Second Circuit in both *Bilzerian* and *Mandanici,* that shifting an element of the offense from jury to judge and utilizing a preponderance rather than a beyond a reasonable doubt standard does not implicate fundamental fairness. I further note that any other conclusion could well lead to overwhelming and disastrous results given that every court in every jurisdiction in the country has treated drug quantity as a sentencing factor for the judge to determine for well over ten years. Respect for the doctrine of finality, a critical component underlying the Court's decision in *Teague,* must impose some reasonable limits. Requiring retroactive application of *Apprendi* to every federal and state sentence imposed under such a bifurcated fact-finding system would necessitate a review of thousands of cases when actual innocence of the defendant of the charge and sentence is not in doubt.[9]

Although not controlling, I note also that every court that has considered the application of *Apprendi* on direct review has held that it falls within the doctrine of a harmless or plain error, rather than a structural error and thus, only few direct appeals have necessitated a reversal. *See e.g. United States v. Garcia–Guizar,* 227 F.3d 1125 (9th Cir.2000) (holding no plain error under *Apprendi* where defendant

---

**9.** I fully recognize that a defendant may be "actually innocent" of a sentencing enhancement while guilty of the underlying offense.

*See e.g. O'Dell,* 521 U.S. 151, 117 S.Ct. 1969, 138 L.Ed.2d 351.

convicted of drug distribution sentenced below lowest applicable statutory maximum); *United States v. Page*, 2000 WL 1682523 (6th Cir. Nov. 9, 2000) (no plain error under *Apprendi* as to three of four defendants); *United States v. Nealy*, 2000 WL 1670932 (11th Cir. Nov. 7, 2000) (failure to submit issue of drug quantity to jury was harmless error, not structural error requiring reversal); *United States v. Sheppard*, 219 F.3d 766 (8th Cir.2000) (claimed *Apprendi* violation subject to harmless error analysis). The standard for invoking "structural" error on direct review is similar to that for a "watershed" principle under *Teague*; that is, the error must implicate the "fundamental fairness and accuracy of a criminal proceeding." *Sullivan v. Louisiana*, 508 U.S. 275, 277, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).

■ Based upon the foregoing, I find that *Apprendi* should not be applied retroactively to cases on collateral review in which the petitioner challenges a sentence imposed by virtue of a judicial finding of fact substantiating a statutory sentencing enhancement by a preponderance of the evidence. I note that in this case, even if *Apprendi* could be applied retroactively, petitioner would not be entitled to relief. First, his sentence was below the lowest possible statutory maximum of 20 years. *See U.S. v. Garcia–Guizar*, 227 F.3d 1125 (rejecting direct appeal under *Apprendi* where defendant sentenced below statutory maximum). In *Garcia–Guizar*, the Ninth Circuit declined to reach the issue of whether *Apprendi* prohibits application of statutory mandatory minimum sentences. The court assumed, without deciding, that it did and held that the defendant suffered no prejudice since the guideline range exceeded the statutory mandatory minimum. The court did not address the issue petitioner raises in this case relative to the court's ability to depart below a statutory minimum sentence following a determination that a minimum drug quantity level has been met. Petitioner did in fact request a downward departure in this case and, based upon drug quantity, I would not have considered a downward departure below the statutory mandatory minimum of 10 years. To the extent that the Ninth Circuit has not addressed this issue, the *Apprendi* decision itself suggests that it has no application to mandatory minimum sentences. The *Apprendi* majority expressly declined to overrule the Court's prior holding in *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) which upheld a state mandatory minimum sentencing system that required minimum sentences based upon a judicial finding, by a preponderance of the evidence, that a defendant "visibly possessed a firearm" in connection with certain specified felonies. *Apprendi*, 530 U.S. at — — —, n. 13, 120 S.Ct. at 2360–62, n. 13. The Court in *McMillan* reasoned that such a system was constitutional since it did not alter the maximum penalties and "operates solely to limit the sentencing court's discretion in selecting a penalty within the range already available to it ..." *Id.* at 87–88, 106 S.Ct. 2411.

Accordingly, petitioner's motion to vacate his conviction and sentence (# 24) is DENIED.

IT IS SO ORDERED.