**UNITED STATES of America**

v.

**Terrence GIBBS.**

**No. Crim.A. 96–539–2,**
**No. Civ.A. 00–3989.**

United States District Court,
E.D. Pennsylvania.

Dec. 19, 2000.

Frank A. Labor, III, Assistant U.S. Attorney, Philadelphia, PA, for U.S.

Paul Hetznecker, Law Offices of Hetznecker & Meehan, Edward F. Borden, Jr., Earp Cohn, P.C., Philadelphia, PA, for Terrence Gibbs.

Terrence Gibbs, Beaumont, TX, Pro se.

1. For a more complete statement of the facts underlying the case, see the opinion of the Court of Appeals at pages 195–96 and 216.

2. Title 21 U.S.C. § 841(a)(1) provides:
 [I]t shall be unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. . . .

*MEMORANDUM*

BARTLE, District Judge.

Before the court is the pro se motion of Terrence Gibbs ("Gibbs") under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence. While Gibbs raises a number of issues, the significant question presented is whether the Supreme Court's recent decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), is to be given retroactive application on collateral review.

Gibbs, along with 16 other defendants, was indicted for crimes associated with a violent drug organization which sold cocaine. At trial the Government presented evidence that he was one of the ringleaders and organizers. On May 12, 1997 a jury found him guilty of conspiracy to distribute cocaine, bribery of a public official, operating a continuing criminal enterprise, use of a telephone to facilitate a drug felony, and money laundering conspiracy. Gibbs was subsequently sentenced to life in prison on the conspiracy count, 15 years on the bribery count, 4 years for each of 15 telephone counts, and 20 years for both money laundering conspiracy counts. His conviction and sentences were affirmed by the Court of Appeals, *see United States v. Gibbs*, 190 F.3d 188 (3d Cir.1999), and the Supreme Court thereafter denied certiorari. *See Gibbs v. United States*, 528 U.S. 1131, 120 S.Ct. 969, 145 L.Ed.2d 840 (January 18, 2000).[1]

**I.**

Gibbs' timely collateral attack challenges his life sentence imposed pursuant to his conviction for conspiracy to distribute cocaine in violation of 21 U.S.C. § 841(a)(1)[2] and § 846.[3] Gibbs relies on *Apprendi v.*

3. Title 21 U.S.C. § 846 provides:

 Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

*New Jersey,* in which the Supreme Court invalidated a New Jersey "hate crime" law. That law authorized the trial judge to enhance a defendant's sentence for a crime if the judge found by a preponderance of the evidence that the defendant had acted with the purpose of intimidating an individual due to that individual's race, gender, handicap, religion, sexual orientation, or ethnicity. *See Apprendi,* 120 S.Ct. at 2351. The Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 2362–63.

Gibb was tried before *Apprendi* was handed down. At the close of the evidence the court instructed the jurors that they need not decide the actual or exact amount of drugs for which he was responsible in order to find him guilty of conspiracy to distribute cocaine. In accordance with the law as it then existed, this court determined the drug quantity at the sentencing hearing and did so by a preponderance of the evidence. *See United States v. Gibbs,* 813 F.2d 596, 600 (3d Cir.1987); *see also United States v. Angle,* 230 F.3d 113 (4th Cir.2000); *United States v. Thomas,* 204 F.3d 381, 384 (2d Cir.2000). We found that Gibbs was responsible for more than 150 kilograms of cocaine and more than 1.5 kilograms of crack cocaine. Consequently, he was sentenced under § 841(b)(1)(A)[4] which provides that a violation of § 841 involving 5 kilograms or more of cocaine is punishable by a term of imprisonment ranging from 10 years to life. Without a finding of a specific drug quantity, the court would have been obligated to impose Gibbs' sentence under § 841(b)(1)(C).[5] This subsection sets forth a maximum term of 20 years imprisonment absent death or serious bodily injury. Gibbs argues that since the finding of drug quantity at his sentencing resulted in a sentence greater than the 20 year statutory maximum, both his due process rights under the Fifth Amendment and his right to a jury trial under the Sixth Amendment were violated and his life sentence on Count I should therefore be vacated.

As a result of *Apprendi* it is clear that if Gibbs were being tried today the Government would be compelled to prove the drug quantity to a jury beyond a reasonable doubt in order for the court to be able to impose a sentence of imprisonment greater than the statutory maximum of 20 years set forth in § 841(b)(1)(C).[6] Gibbs, of course, is not being tried today. He is before this court on collateral review after his conviction and sentence were affirmed on direct appeal. It has long been recognized that the purpose of collateral review is limited. "It is not designed as a substitute for direct review." *Mackey v. United States,* 401 U.S. 667, 682, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in judgments in part and dissenting in part). The narrowness of the habeas remedy is based on the importance of finality in our criminal justice system. As a plu-

---

**4.** Title 21 U.S.C. § 841(b)(1)(A) provides:
(b) ... any person who violates subsection (a) of this section shall be sentenced as follows:
(1)(A) In the case of a violation of subsection (a) of this section involving ... 5 kilograms or more of a mixture or substance containing a detectable amount of ... cocaine ... such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life....

**5.** 21 U.S.C. § 841(b)(1)(C) provides:
(b) ... any person who violates subsection (a) of this section shall be sentenced as follows....

(C) In the case of a controlled substance in schedule I or II ... except as provided in subparagraphs (A), (B), and (D), such person shall be sentenced to a term of imprisonment of not more than 20 years....

**6.** Circuits that have addressed the issue have explicitly held that *Apprendi* applies to enhanced penalties under § 841(b). *See United States v. Doggett,* 230 F.3d 160 (5th Cir.2000); *United States v. Nordby,* 225 F.3d 1053 (9th Cir.2000); *United States v. Aguayo–Delgado,* 220 F.3d 926 (8th Cir.2000).

rality of the Supreme Court explained in *Teague v. Lane,* "[a]pplication of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system. Without finality, the criminal law is deprived of much of its deterrent effect." 489 U.S. 288, 309, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion). In keeping with the limited purpose of the writ of habeas corpus, the Supreme Court has established a very strict test for determining whether a recently announced change in the law is to be applied retroactively to cases on collateral review.

■ The test was first articulated by a plurality of the Court in *Teague,* but it has now been adopted by a majority of the justices. *See O'Dell v. Netherland,* 521 U.S. 151, 156–57, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997); *Caspari v. Bohlen,* 510 U.S. 383, 389–90, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994). A new rule is not applicable to cases which have become final before the announcement of the new rule unless it falls within one of two exceptions:

> First, a new rule should be applied retroactively if it places "certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe." Second, a new rule should be applied retroactively if it requires the observance of "those procedures that ... are implicit in the concept of ordered liberty."

*Teague,* 489 U.S. at 307, 109 S.Ct. 1060 (quoting *Mackey,* 401 U.S. at 692–93, 91 S.Ct. 1160) (some internal quotations omitted). In subsequent cases the Court enunciated a three-step analysis under the *Teague* test. *See O'Dell,* 521 U.S. at 156, 117 S.Ct. 1969; *Caspari,* 510 U.S. at 390, 114 S.Ct. 948. First, the date on which the defendant's conviction became final must be ascertained. Second, the habeas court must decide whether the holding in question constitutes a new rule. Finally, if

the rule is new, we must determine whether it falls "within one of the two narrow exceptions to the *Teague* doctrine." *O'Dell,* 521 U.S. at 156–57, 117 S.Ct. 1969.

■ Gibbs conviction became final on January 18, 2000, the day the Supreme Court denied certiorari. This was prior to the issuance of the *Apprendi* decision on June 26, 2000. Thus, we must decide if it announces a new rule. A rule is new if it "breaks new ground or imposes a new obligation on the States or the Federal Government," or if the result of the rule "was not dictated by precedent existing at the time the defendant's conviction became final." *Teague,* 489 U.S. at 301, 109 S.Ct. 1060. The holding in *Apprendi* was not dictated by precedent and clearly imposes a new obligation on the Government. It requires it to prove certain facts to a jury beyond a reasonable doubt when previously it needed only to prove such facts to a judge at sentencing by a preponderance of the evidence. We conclude that *Apprendi* announces a new rule as defined under *Teague.* Other courts addressing the issue are in accord. *See Jones v. Smith,* 231 F.3d 1227 (9th Cir.2000); *United States v. Pittman,* 120 F.Supp.2d 1263 (D.Or.2000).

■ Our inquiry now turns to the question whether the new rule announced in *Apprendi* falls within one of the two *Teague* exceptions so as to be applied retroactively. The first exception relates to a situation rendering certain acts non-criminal and is not relevant here. *Apprendi* therefore cannot affect Gibbs' case unless its holding is a "watershed rule[ ] of criminal procedure" that is "implicit in the concept of ordered liberty." *Teague,* 489 U.S. at 311, 109 S.Ct. 1060 (internal quotations omitted). The "precise contours of this exception ... [are] difficult to discern." *Saffle v. Parks,* 494 U.S. 484, 495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990). For a rule to qualify under the second exception "the procedure at issue must implicate the fundamental fairness of the trial," and be such that without it "the likelihood of an accurate conviction is seriously diminish-

ed." *Teague*, 489 U.S. at 312, 313, 109 S.Ct. 1060. However, "[a] rule that qualifies under this exception must not only improve accuracy, but also alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Sawyer v. Smith*, 497 U.S. 227, 242, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990) (internal quotations omitted). The Supreme Court has repeatedly pointed to *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), as illustrative. There the Court held that "a defendant has the right to be represented by counsel in all criminal trials for serious offenses." *Saffle*, 494 U.S. at 495, 110 S.Ct. 1257.

Regardless of the difficulty of defining the boundaries of the second exception, there are not "many such components of basic due process ... yet to emerge" that would fall within it. *Teague*, 489 U.S. at 313, 109 S.Ct. 1060. Supreme Court decisions since *Teague* have borne this out. It has yet to invoke the second exception. The Court has repeatedly held that the new rules before it do not fit within the second exception for watershed rules of criminal procedure.[7] For example, in *O'Dell* the Court declined to apply to actions already final the new rule announced in *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), that "a capital defendant must be permitted to inform his sentencing jury that he is parole ineligible if the prosecution argues that he presents a future danger." *O'Dell*, 521 U.S. at 153, 117 S.Ct. 1969. The Court rejected the argument that the rule was "on par" with *Gideon*, holding that "the narrow right of rebuttal that *Simmons* affords to defendants in a limited class of capital cases has hardly 'alter[ed] our understanding of the bedrock procedural elements essential to the fairness of a proceeding.'" *Id.* at 167, 114 S.Ct. 2187 (quoting *Sawyer*, 497 U.S. at 242, 110 S.Ct. 2822) (some internal quota-

tions omitted). Similarly, in *Sawyer* the Court held that another new rule was not retroactive. There the new rule, announced in *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), prohibited the imposition of a death sentence by a jury that "has been led to the false belief that the responsibility for determining the appropriateness of the defendant's capital sentence rests elsewhere." *Sawyer*, 497 U.S. at 233, 110 S.Ct. 2822. The Court reasoned that while the *Caldwell* holding did enhance the accuracy of a capital sentencing, it did not come within *Teague*'s second exception since it was simply "added to an existing guarantee of due process protection against fundamental unfairness." *Id.* at 244, 110 S.Ct. 2822.

Despite the narrowness of the second *Teague* exception, courts, other than the Supreme Court, have found it to apply on occasion. Most notably, several circuits have retroactively applied the rule of *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) (per curiam), which held that a jury charge that incorrectly lowered the reasonable doubt standard violated the Due Process Clause of the Fourteenth Amendment. *See, e.g., Humphrey v. Cain*, 138 F.3d 552, 552 (5th Cir.1998) (en banc); *Adams v. Aiken*, 41 F.3d 175, 178–79 (4th Cir.1994); *Nutter v. White*, 39 F.3d 1154, 1158 (11th Cir.1994). Our Court of Appeals recently reached the same conclusion in *West v. Vaughn*, 204 F.3d 53 (3d Cir.2000).

Applying the *Teague* test, the Court of Appeals first acknowledged that *Cage* announced a new rule. *See id.* at 60 n. 6. It then concentrated its analysis on whether the rule fit within the second *Teague* exception. It relied on *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), which decided that a defective reasonable doubt instruction such

---

7. For a detailed list of 11 cases in which the Court has refused to apply a new rule of criminal procedure retroactively, see *United*

*States v. Mandanici*, 205 F.3d 519, 529 (2d Cir.2000).

as the one in *Cage* constituted a structural error to which harmless-error analysis was inapplicable. *West*, 204 F.3d at 55; *Sullivan*, 508 U.S. at 280, 113 S.Ct. 2078. Since the incorrect reasonable doubt instruction at issue "vitiate[d] all the jury's findings," there was no jury verdict upon which to conduct harmless-error review. *Sullivan*, 508 U.S. at 281, 113 S.Ct. 2078. Applying *Sullivan* to the habeas petition before it, our Court of Appeals in *West* reasoned that "[a] 'structural' error so severe that it resists harmless error analysis because it effectively nullifies the guilty verdict, as *Sullivan* described a *Cage* error to be ... must necessarily implicate the fundamental fairness of the proceeding in a manner that calls the accuracy of its outcome into doubt." *West*, 204 F.3d at 61 (internal citation omitted). *West* thus held that the new rule announced in *Cage* applied retroactively to cases on collateral review.

■ Following the analysis in *West*, the new rule announced in *Apprendi* does not represent a watershed rule of criminal procedure that should be applied retroactively on collateral review unless it corrects a previous structural error in the trial process. If it is the type of constitutional error amenable to harmless-error analysis, retroactive application is not warranted.

The Supreme Court's decision in *Neder v. United States*, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), in our view is dispositive. The high Court accepted the case after affirmance of Neder's conviction by the Eleventh Circuit. Neder had been tried and convicted for violating various federal tax, mail, and wire fraud statutes. At his trial the element of materiality was not submitted to the jury. Rather, the judge made a finding that the evidence established materiality. After Neder's trial and before his appeal to the Eleventh Circuit, the Supreme Court held in *United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), that it was error not to submit the issue of materiality to the jury and affirmed the reversal of Gaudin's conviction. Neder argued that

his conviction should likewise be reversed. The Supreme Court disagreed. It did acknowledge that the jury had not rendered a "complete verdict" because the error in the jury instruction prevented it from making a finding of materiality. *Neder*, 527 U.S. at 11, 119 S.Ct. 1827. Nonetheless, the Court "recognized that 'most constitutional errors can be harmless'" and proceeded to apply a harmless-error analysis. *Id.* at 8, 119 S.Ct. 1827 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 306, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). Although the Court noted that "[i]t would not be illogical to extend the reasoning of *Sullivan* from a defective 'reasonable doubt' instruction to a failure to instruct on an element of the crime," it instead followed prior precedent. *Id.* at 15, 119 S.Ct. 1827. It explained it "often applied harmless-error analysis to cases involving improper instructions on a single element of the offense." *Id.* at 9, 119 S.Ct. 1827. Since the error at issue in *Neder* "did not 'vitiat[e] all of the jury's findings'" as the faulty reasonable doubt instruction in *Cage* and *Sullivan* had done, the Court concluded that a structural error had not occurred, and it affirmed Neder's conviction. *Id.* at 11, 119 S.Ct. 1827 (quoting *Sullivan*, 508 U.S. at 282, 113 S.Ct. 2078 (Rehnquist, C.J., concurring)). The Court declared:

> The error at issue here—a jury instruction that omits an element of the offense—differs markedly from the constitutional violations we have found to defy harmless-error review. Those cases, we have explained, contain a 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself....' Unlike such defects as the complete deprivation of counsel or trial before a biased judge, an instruction that omits an element of the offense does not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.

*Id.* at 8–9, 119 S.Ct. 1827 (quoting *Fulminante*, 499 U.S. at 310, 111 S.Ct. 1246).

Thus, under *Neder*, the lack of a jury instruction on a single element of a crime that results in a judge rather than a jury determining that element is amenable to harmless-error analysis because such an error is *not* structural.[8]

*Apprendi*, like *Neder* and unlike *Sullivan*, involves a judicial determination of only a single element of a crime. Gibbs' case is similar to *Apprendi* and *Neder*. The jury found beyond a reasonable doubt that he was guilty of conspiracy to distribute cocaine. The only element the court found was drug quantity, after the jury had rendered its guilty verdict. One circuit court has even stated that "[t]he error in *Neder* is in material respects indistinguishable from error under *Apprendi*." *United States v. Swatzie*, 228 F.3d 1278, 1283 (11th Cir.2000). We concur. The lack of a jury finding as to drug quantity and the lack of such a finding made beyond a reasonable doubt does not call into question the validity of a verdict in the way a faulty reasonable doubt instruction does. What happened here did not infect the entire result. The role of the court in determining drug quantity did not render Gibbs' trial "fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Neder*, 527 U.S. at 9, 119 S.Ct. 1827. The evidence presented against Gibbs, a leader of a violent drug conspiracy, was overwhelming. There is simply no basis to believe that the "likelihood of an accurate conviction is seriously diminished" by not applying *Apprendi* retroactively. *Teague*, 489 U.S. at 313, 109 S.Ct. 1060.

Any constitutional defect in this case, which was not a recognized defect at the time of the trial or the direct appeal, is not structural. It clearly does not rise, for example, to the level of error created by lack of counsel or a biased judge. *See Neder*, 527 U.S. at 9, 119 S.Ct. 1827. Gibbs is before us on collateral review. The hurdle he must overcome is high. In *Wright v. West*, 505 U.S. 277, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992), the Supreme Court explained that "habeas corpus 'is not intended ... as a device for reviewing the merits of guilt determinations at criminal trials,' but only 'to guard against extreme malfunctions in the ... criminal justice systems.'" *Id.* at 292, 112 S.Ct. 2482 (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment)). What occurred here was not an "extreme malfunction" of the criminal justice system.[9]

In sum, *Apprendi*, while announcing a new rule, does not involve a structural error or a "watershed rule[ ] of criminal procedure" that "implicate[s] the fundamental fairness of the trial." *Teague*, 489

---

8. While our Court of Appeals has not addressed the issue, several circuits have held that the new rule announced in *Gaudin* requiring materiality to be determined by the jury does not apply retroactively to cases on collateral review. *See United States v. Mandanici*, 205 F.3d 519 (2d Cir.2000); *Bilzerian v. United States*, 127 F.3d 237 (2d Cir.1997); *United States v. Shunk*, 113 F.3d 31 (5th Cir. 1997); *United States v. Swindall*, 107 F.3d 831 (11th Cir.1997). When discussing why the *Gaudin* rule did not fall within the second *Teague* exception the *Bilzerian* court explained:

That a jury determination of guilt or innocence is an important element of a criminal trial does not necessarily mean that *Gaudin* is a 'watershed rule' of criminal procedure.... The rule in *Gaudin* merely shifts the determination of materiality from the judge to the jury. This shifting does not

'alter our understanding of the bedrock procedural elements' essential to the fairness of a trial.

127 F.3d at 241 (quoting *Teague*, 489 U.S. at 311, 109 S.Ct. 1060).

9. If Gibbs' case were now in front of the Supreme Court on direct review, we believe the Court would apply harmless-error analysis to it in the same manner as it did in *Neder*. Two recent Circuit court decisions have addressed claims by defendants in situations where *Apprendi* was issued in the interim between their trial and appeal, like the situation in *Neder*. In both cases, the courts held that harmless-error analysis applied. *See United States v. Nealy*, 232 F.3d 825, 829 (11th Cir.2000); *United States v. Sheppard*, 219 F.3d 766, 768–69 (8th Cir.2000).

U.S. at 311, 312, 109 S.Ct. 1060. Because *"Apprendi* did not recognize or create a structural error," *Nealy,* 232 F.3d 825, 829, *Apprendi* does not apply retroactively to cases on collateral review under the precedents of *Neder, Sullivan,* and *West.*[10] Accordingly, we will not overturn Gibbs' life sentence for conspiracy to distribute cocaine.

## II.

Gibbs also contends that his trial and appellate counsel were ineffective under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to establish a claim of ineffective assistance of counsel that rises to the level of constitutional error, Gibbs must prove: (1) counsel's performance "fell below an objective standard of reasonableness," that is, that he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) the deficient representation prejudiced movant, that is, that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687–88, 104 S.Ct. 2052. In order to make out prejudice under *Strickland,* Gibbs must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. 2052.

Gibbs claims that his trial counsel was ineffective for failing to move to strike several jurors for cause. His claim first centers on Juror No. 298 and her response to a voir dire question regarding firearms and the possession of firearms. She revealed that she had been shot in 1956 and lost her right leg as a result and that her son had been killed in a drive-by shooting three years prior to the trial. *See* Tr., Apr. 29, 1997 at 7–9, *United States v. Coleman* (E.D.Pa.1996) (No. 96–539). Based on these experiences, Juror No. 298 admitted that she had strong feelings against firearms. *Id.* The court then inquired if she could fairly and impartially try the case based on the evidence produced and the law that the court would outline. She responded unequivocally that she could. *Id.* None of the six defense attorneys present moved to strike her for cause or exercised a peremptory challenge, and she was subsequently seated on the jury. *Id.* at 41. Gibbs asserts that since evidence of his involvement in a drive-by shooting was presented at trial Juror No. 298 should have been removed by his trial counsel. *See* Tr., May 6, 1997 at 118–23, 127–30.

Gibbs also argues that his trial counsel should have moved to strike Juror Nos. 199, 308, 58, and 153 for the following reasons: Juror No. 199 was robbed a year prior to the trial and has a cousin who is an FBI agent; Juror No. 308's son is a police officer in Lancaster County, Pennsylvania; Juror No. 58 has a cousin who was arrested for drugs; Juror No. 153's mother was jumped and assaulted a year before trial and her car was burglarized

---

10. We note that of the one circuit court and seven district court decisions we have found addressing the issue of *Apprendi* 's retroactivity to cases on collateral review, six have reached the same result we do. *See Jones v. Smith,* 231 F.3d 1227 (9th Cir.2000); *Ware v. United States,* 124 F.Supp.2d 590 (M.D.Tenn. 2000); *United States v. Johnson,* —— F.Supp.2d —— (D.Neb.2000); *United States v. Joseph,* No.Crim. A. 96–275, 2000 WL 1789989 (E.D.La. Dec. 5, 2000); *West v. United States,* No. S 00–3521, 2000 WL 1790425 (D.Md. Dec. 4, 2000); *United States v. Pitt-*

*man,* 120 F.Supp.2d 1263 (D.Or.2000). *But see Darity v. United States,* —— F.Supp.2d —— (W.D.N.C.2000); *United States v. Murphy,* 109 F.Supp.2d 1059 (D.Minn.2000). In determining that *Apprendi* does not apply retroactively to cases on collateral review, the United States District Court for the District of Oregon took a view similar to that of our Court of Appeals, holding that "[t]he standard for invoking 'structural' error on direct review is similar to that for a 'watershed' principle under *Teague." Pittman,* at 1270.

during the trial.[11] *See* Tr., Apr. 28, 1997 at 31, 34, 52, 68; Tr., May 12, 1997 at 10–12.

 Counsel's failure to seek to remove a prospective juror during voir dire can only amount to ineffective assistance of counsel if the decision to do so falls "below an objective standard of reasonableness." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. There are no strict guidelines for establishing this objective standard, but the Court directed in *Strickland* that "[p]revailing norms of practice as reflected in American Bar Association standards and the like, *e.g.,* ABA Standards for Criminal Justice . . . are guides to determining what is reasonable. . . ." *Id.* at 688, 104 S.Ct. 2052. As our Court of Appeals has pointed out, "[t]he ABA Standards for Criminal Justice recognize as being among the non-fundamental issues reserved for counsel's judgment 'whether and how to conduct cross-examinations, *what jurors to accept or strike,* [and] what trial motions should be made. . . .' " *Government of the Virgin Islands v. Weatherwax,* 77 F.3d 1425, 1434 (3d Cir.1996) (emphasis added) (quoting *ABA Standards* § 4–5.2(b)); *see United States v. Dent,* No. Civ. A. 99–2878, 1999 WL 717114, at *6 (E.D.Pa. Sept. 10, 1999). Thus, the decision whether to move to strike a potential juror for cause belongs to trial counsel. If "that decision has a rational basis, a court is without authority to second-guess counsel's judgment call." *Weatherwax,* 77 F.3d at 1436.

The affidavit of Gibbs' attorney states:

The Court's voir dire of Juror No. 298 disclosed no factual basis to support a motion to strike Juror No. 298 for cause on the ground that she was biased or would not be impartial, under existing law. Similarly, the Court's voir dire of Jurors Nos. 199, 158[sic], 153, 58, 308 disclosed no factual basis to support a motion to strike for cause on the grounds that these jurors were biased or would not be impartial, under existing law.

Caglia Aff. ¶ 4. Given the "highly deferential" scrutiny required by *Strickland* we do not see how a decision not to seek the removal of Jurors Nos. 298, 199, 308, 58, and 153 falls below an objective standard of reasonableness.

 Gibbs contends that the jurors at issue, particularly Juror No. 298, should have been viewed as presumptively biased under the implied bias doctrine based upon their life experiences. He relies on the concurrence by Justice O'Connor in *Smith v. Phillips,* 455 U.S. 209, 221, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) to make this argument. His reliance is misplaced. The majority in *Phillips* refused to apply the implied bias doctrine, holding that the proper remedy for an allegation of juror partiality is a hearing at which the defendant can attempt to prove actual bias. *See id.* at 215, 102 S.Ct. 940. In her concurrence, Justice O'Connor noted that the Court "[did] not foreclose the use of 'implied bias' in appropriate circumstances." *Id.* at 221, 102 S.Ct. 940 (O'Connor, J., concurring). She went on to explain, however, that it would apply only in "extreme situations," such as where the juror at issue is employed by the prosecutor or a close relative of one of the participants in the trial. *Id.* at 222, 102 S.Ct. 940.

 The situation in Gibbs' case is clearly not "extreme." Unfortunately, it is not uncommon for members of our jury panels to have been victims of crime or have relatives and close friends who have been victims. We refuse to apply the implied bias doctrine simply because a juror has faced such adversities, or is the rela-

---

**11.** Juror No. 153 was staying at a hotel in the city during the trial. The night before the last day of the trial her car was burglarized in the hotel parking lot. When the court was advised of what had occurred, she was asked at sidebar if she would be able to pay attention and continue sitting on the case given what had happened. She responded that she could. *See* Tr., May 12, 1997 at 10–12. None of the defense attorneys requested that she be replaced by an alternate juror. In fact, one defense attorney specifically stated on the record that he did not want Juror No. 153 removed. *Id.* at 3–4.

tive of a law enforcement agent or someone arrested for drug possession. Being the victim of a crime is not alone grounds to remove a juror. *See Jacobs v. Redman,* 616 F.2d 1251, 1256–57 (3d Cir.1980). Neither is having a relative employed by a law enforcement agency or involved in illegal drugs. *See United States v. Morales,* 185 F.3d 74, 83–83 (2d Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1282, 146 L.Ed.2d 229 (2000); *United States v. Polan,* 970 F.2d 1280, 1284 (3d Cir.1992). If a juror is questioned regarding potential bias and the court is convinced, as it was here, that he or she will be fair and impartial there is no need for removal.

We find no merit in Gibbs' implied bias argument. His counsel's conduct in failing to move to strike certain jurors did not fall below an objective standard of reasonableness, and his ineffective assistance of counsel claim on this ground must fail.[12]

### III.

Gibbs also claims his trial counsel was ineffective because he failed to request that an alternate juror replace a juror who was allegedly excused prior to deliberations. He contends that the trial transcript reveals that only 11 members of the jury were polled after the verdict and therefore that only 11 jurors deliberated. He maintains that Juror No. 51 was somehow absent.

A simple explanation exists. Juror No. 51 was the foreperson. She read the verdict aloud and signed the verdict sheet. Since she had already announced her vote, polling her again would have been redundant. Court records also demonstrate that she was present and reimbursed for her service on May 12, 1997, the day of the verdict. Furthermore, this court takes judicial notice of the fact that 12 jurors were in the courtroom at all times during the trial and specifically that 12 jurors returned a guilty verdict. *See, e.g., Tanner*

*v. United States,* 483 U.S. 107, 125–26, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987); *Government of the Virgin Islands v. Nicholas,* 759 F.2d 1073, 1077 (3d Cir.1985). Gibbs trial counsel concurs, stating under oath that "[t]he jury that retired to deliberate was composed of twelve jurors, and twelve jurors returned the verdict in open court." Caglia Aff. ¶ 5. In short, Gibbs is plainly wrong about the number of jurors present and polled. Consequently, his counsel was not ineffective in failing to seek the replacement of a non-absent juror.

### IV.

Gibbs raises several other ineffective assistance of counsel claims that are completely meritless and require no discussion. He has failed to show that the performance of his trial or appellate counsel was ineffective under *Strickland.*

### V.

In conclusion, the motion of Terrence Gibbs under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence will be denied.

---

12. We note again that none of the other five defense attorneys participating in the voir dire moved to strike any of the relevant jurors, adding weight to our conclusion that Gibbs' counsel's conduct did not fall below an objective standard of reasonableness.