IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

_____

**E.H.**
*Petitioner,*

*v.*

**THE HONORABLE DAN SLAYTON, JUDGE OF THE SUPERIOR COURT OF THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF COCONINO,**
*Respondent Judge,*

**STATE OF ARIZONA; JASON CONLEE; LENDA HESTER; KIMMY WILSON,**
*Real Parties in Interest.*

No. CR-19-0118-PR
Filed August 4, 2020

_____

Special Action from the Superior Court in Coconino County
The Honorable Dan R. Slayton, Judge
No. CR2016-00434; CR2016-00435; CR2016-00436
**REVERSED**

Memorandum Decision of the Court of Appeals
Division One
No. 1 CA-SA 19-0004
Filed March 14, 2019
**REVERSED**

_____

COUNSEL:

William Ring, Coconino County Attorney, Stacy L. Krueger, Michael S. Tunink (argued), Kory Koerperich, Deputy County Attorneys, Flagstaff, Attorneys for the State of Arizona

Colleen Clase (argued), Jessica Gattuso, Eric Aiken, Robert Swinford, Phoenix, Arizona Voice for Crime Victims, Attorneys for E.H.

C. Kenneth Ray II, P.L.L.C., Prescott, Attorney for Lenda Hester

Ryan J. Stevens, Griffen & Stevens Law Firm, PLLC, Flagstaff, Attorneys for Kimmy Wilson

Randall Udelman, Arizona Crime Victims Rights Law Group, Phoenix, Attorneys for Amicus Curiae National Crime Victim Law Institute

───────────────

CHIEF JUSTICE ROBERT BRUTINEL authored the opinion of the Court, in which VICE CHIEF JUSTICE TIMMER and JUSTICES BOLICK, GOULD, LOPEZ, BEENE and MONTGOMERY joined.

───────────────

CHIEF JUSTICE BRUTINEL, opinion of the Court:

¶1 Victims have a statutory right to receive full restitution for economic loss caused by a defendant. A.R.S. § 13-603(C); *see also* Ariz. Const. art. 2, § 2.1(A)(8) (providing that victims have a right to receive "prompt restitution"). Here, we hold that the practice of placing a cap on the amount of restitution a defendant may be liable for in a plea agreement, without the victim's consent, violates the right to restitution. There is no constitutional requirement to inform a defendant of a specific amount of restitution or to cap the amount of restitution that a court may order, and thus we overrule *State v. Lukens*, 151 Ariz. 502 (1986), *State v. Phillips*, 152 Ariz. 533 (1987), and *State v. Crowder*, 155 Ariz. 477 (1987) for that proposition.

¶2 Additionally, we hold that a lawyer representing a victim has a presumptive right to sit in front of the bar in the courtroom during a proceeding where a victim's constitutional or statutory rights are at issue.

## I.     BACKGROUND

¶3 Six-year-old J.H. was severely abused and eventually killed by his aunt, Lillian Hester. Hester was convicted of child abuse and first degree murder and ordered to pay restitution to E.H., J.H.'s older half-sibling who witnessed the abuse and is a victim under A.R.S. § 13-4401(19). Three other individuals, Lenda Hester, Jason Conlee, and Kimmy Wilson,[1] pled to charges of endangerment or child abuse in connection with J.H.'s death. Each defendant entered into a plea agreement in which he or she was jointly and severally liable to E.H. for restitution. The maximum amount of liability for restitution was limited to or "capped" at $500,000.

---

[1]     Defendant Wilson's probation terminated on October 22, 2019, and he is no longer liable for restitution in this matter.

**¶4**       E.H. objected to the plea agreement caps on restitution based upon her constitutional and statutory rights to restitution under the Victim's Bill of Rights ("VBR") and implementing legislation. The superior court upheld the cap, citing *Lukens* and *Phillips* as requiring a cap as a condition of a knowing and voluntary guilty plea.

**¶5**       The superior court also directed E.H.'s counsel to sit in the gallery, the space allocated for spectators and members of the public to watch court proceedings. Generally, courtrooms contain a physical barrier, often referred to as the "bar," separating gallery seating from the space at the front of the courtroom before the judge's bench. The space in front of the bar is known as the "well" of the courtroom and is designated for the parties and their lawyers. Here, the superior court advised E.H.'s counsel she was not permitted to sit in the well of the courtroom but should instead sit in the gallery and only step in front of the bar when invited to do so to address an issue relevant to E.H.'s rights.

**¶6**       E.H. filed a special action challenging both the restitution caps and the requirement that her counsel sit in the gallery. The court of appeals noted that under § 13-603(C), the superior court is required to order the defendants to pay E.H. restitution for the full amount of economic loss proven. But the court declined to accept jurisdiction in the absence of evidence that E.H. was prejudiced by the restitution caps.

**¶7**       We granted review to address the apparent conflict between a victim's right to restitution and the need for a restitution cap as well as the right of a victim's counsel to sit in the well. Both issues are of statewide importance. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution. Because this case involves issues of constitutional and statutory interpretation, we review de novo. *See Molera v. Reagan*, 245 Ariz. 291, 294 ¶ 8 (2018).

## II.    DISCUSSION

### A. Due Process Does Not Require Restitution Caps.

**¶8**       Initially, the State argues that E.H.'s case is not ripe for our review, unless and until a restitution claim is denied because of the cap in the plea agreements. We disagree. By entering into agreements that capped the amount of restitution available to E.H., the State and defendants effectively waived E.H.'s statutory right to restitution for her full economic losses. A victim may agree to a restitution cap as part of a plea agreement, and thereby forego her statutory right to full restitution, if that amount exceeds the cap, but the prosecutor may not do it for her. *See State v. Warner*, 168 Ariz. 261, 264 (App. 1990) ("[W]hile the state has standing to assert a victim's rights, it has no authority to waive those rights." (internal citation omitted)). This improper waiver of E.H.'s individual right is an injury ripe for review. *See Brush & Nib Studio, LC v. City of Phoenix*, 247 Ariz. 269, 280 ¶ 36 (2019).

**¶9** By entering into a plea agreement, a defendant incriminates himself and waives his constitutional right to trial before a jury or judge. *Brady v. United States*, 397 U.S. 742, 748 (1970). Thus, plea agreements must be voluntarily and intelligently made, and a defendant must have "sufficient awareness of the relevant circumstances and likely consequences." *Id.* Noting these requirements, the *Lukens* court held that a defendant could not be required to pay restitution in an amount exceeding the statutorily-prescribed monetary limit for a crime unless he knowingly and voluntarily agreed to do so. *Lukens*, 151 Ariz. at 503, 505. The *Phillips* court agreed and reasoned that a defendant could not have knowingly and voluntarily agreed to pay restitution unless he knew the specific restitution amount or agreed to the maximum amount of restitution that could be imposed under the plea. *Phillips*, 152 Ariz. at 535 & n.2.

**¶10** Based on these cases, restitution caps have been included in plea agreements in the belief that they are necessary to protect defendants' due process rights. *See State v. Adams*, 159 Ariz. 168, 170 (1988) ("*Phillips* defines a right under the fourteenth amendment to the United States Constitution."). However, while due process only permits a court to accept a plea if a defendant has voluntarily and intelligently waived his constitutional rights, *see Brady*, 397 U.S. at 747 n.4, it does not require a court to inform a defendant of a specific amount of restitution or to cap the amount that may be ordered, *see United States v. Ruiz*, 536 U.S. 622, 629 (2002) ("[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it."); *see also* Fed. R. Crim. P. 11(c)(1) advisory committee's note to 1985 amendment (noting there is no requirement to provide a pleading defendant with an exact amount or upper limit of potential restitution). Therefore, because a restitution cap is not constitutionally required under the Fourteenth Amendment, we overrule *Lukens*, *Phillips*, and *Crowder* to the extent they hold that a defendant must be presented with a specific figure or maximum amount of restitution to voluntarily and intelligently enter into a plea agreement.

**¶11** Moreover, restitution caps without the victim's consent are ultimately illusory because the State lacks authority to waive a victim's restitution right. And the trial court also lacks authority to enforce a cap because pursuant to § 13-603(C) and A.R.S. § 13-804(B), it must award the victim the amount of proven economic loss. If a victim's restitution does not exceed the cap, the cap is irrelevant; if a victim's restitution does exceed the cap, it cannot be enforced. In addition to violating a victim's restitution right, the inclusion of an unenforceable restitution cap in a plea agreement misleads a defendant in making a knowing and voluntary plea because any agreed upon limit on the amount of restitution is illusory.

**¶12** Due process is satisfied when a court gives the defendant notice that it will award restitution proven by a preponderance of evidence in a hearing in which the

4

defendant has the right to be present, be represented by counsel, and challenge any request for restitution. *State v. Fancher*, 169 Ariz. 266, 268 (App. 1991); *see* Ariz. R. Crim. P. 17.2(a)(2). The defendant also has the right to seek post-conviction review of that order. *Hoffman v. Chandler ex rel. Cty. of Pima*, 231 Ariz. 362, 366 ¶ 19 (2013).

¶13 Generally, the doctrine of stare decisis cautions us against overruling former decisions. *Derendal v. Griffith*, 209 Ariz. 416, 424 ¶ 33 (2005). In this instance, however, our decision to overturn the restitution cap requirement set out by *Lukens/Phillips/Crowder* does not offend the principles underlying stare decisis. The doctrine does not demand obedience to a clearly erroneous prior judicial decision. *Lowing v. Allstate Ins. Co.*, 176 Ariz. 101, 107 (1993). When, as here, a former decision contains a flawed analysis of constitutional due process requirements, has created significant practical problems, and conflicts with statutory rights, we see no reason for continued adherence.[2] As recognized by Justice Moeller shortly after this court-created requirement was announced, mandating a restitution amount or cap at the time of pleading is "both unworkable and unnecessary." *Crowder*, 155 Ariz. at 483 (Moeller, J., concurring in part and dissenting in part). It remains so today, leading parties to craft and courts to accept plea agreements with an illusory term to avoid a conflict between a defendant's and a victim's rights. While we do not lightly overrule our prior cases, it is appropriate to do so to end this practice.

## B.        This Change Will Apply Prospectively.

¶14 Next, we consider whether the rule announced here should be applied retroactively. Arizona courts follow federal retroactivity jurisprudence. *State v. Towery*, 204 Ariz. 386, 389 ¶ 6 (2003). Specifically, we look to the analytical frameworks established in *Teague v. Lane*, 489 U.S. 288 (1989) and *Allen v. Hardy*, 478 U.S. 255 (1986). *Id.* We resolve the retroactivity of new rules when they are announced. *See Teague*, 489 U.S. at 300.

¶15 *Teague* instructs that new procedural constitutional rules do not apply retroactively to cases that were already final when the rule was announced. *Towery*, 204 Ariz. at 389 ¶ 7 (citing *Teague*, 489 U.S. at 310). Thus, the *Teague* framework involves a three-part analysis. First, we consider if a defendant's conviction is final. *Id.* Then, we examine if the rule at issue is a new rule and if that rule is substantive or procedural. *Id.* A rule is "new" when it is not dictated by existing precedent, such as when a court expressly overturns its own precedent. *See id.* at 390 ¶ 9. Substantive rules define or clarify criminal conduct under a statute whereas procedural rules govern the processes used to ensure criminal proceedings are fair. *See id.* ¶ 10.

---

[2]        The tension between the cap requirement and a victim's right to restitution increased after the enactment of the VBR and its implementing legislation in the 1990s.

¶**16**      To begin, we must determine if the defendants' convictions are final. "A defendant's case becomes final when 'a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied.'" *Id.* at 389–90 ¶ 8 (quoting *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987)). Here, after accepting each of the defendants' guilty pleas, the court entered a judgment of conviction. The defendants waived their right to file an appeal by pleading guilty and the time for filing an "of-right" initial petition for post-conviction relief has expired. *See State v. Ward*, 211 Ariz. 158, 162 ¶¶ 9–11 (App. 2005); Ariz. R. Crim. P. 17.1(e). Additionally, no defendant sought review from the Supreme Court, and the time for doing so has expired. The defendants' convictions are final.

¶**17**      By directly overruling *Lukens*, *Phillips*, and *Crowder*, we announce a new rule. Because the rule here relates to the procedures necessary for a defendant to waive his constitutional rights when pleading guilty, as codified in Arizona Rule of Criminal Procedure Rule 17.2, it is undoubtedly procedural. *See Montgomery v. Louisiana*, 136 S. Ct. 718, 730 (2016) (explaining procedural rules serve to enhance the accuracy of a conviction or sentence).

¶**18**      The directive that new procedural constitutional rules do not retroactively apply to cases that were already final when the new rule was announced is subject to two narrow exceptions. *Towery*, 204 Ariz. at 391 ¶ 14 (citing *Teague*, 489 U.S. at 307, 311). The first exception applies a rule that forbids criminalizing "certain kinds of primary, private individual conduct" retroactively. *Id.* (quoting *Teague*, 489 U.S. at 307). The second exception applies to "watershed rule[s] of criminal procedure" that are "implicit in the concept of ordered liberty." *Id.* (quoting *Teague*, 489 U.S. at 311). This exception is only for an extremely narrow set of rules that are "central to an accurate determination of innocence or guilt." *Teague*, 489 U.S. at 313.

¶**19**      Neither exception allowing retroactive application applies here. Removing the *Lukens*/*Phillips*/*Crowder* restitution cap requirement does not implicate whether private conduct may be criminalized. Nor is the rule announced here a watershed rule that "alter[s] our understanding of the *bedrock procedural elements* essential to the fairness of a proceeding." *Towery*, 204 Ariz. at 391 ¶ 17 (quoting *Tyler v. Cain*, 533 U.S. 656, 665 (2001)). Although a defendant's plea must be knowing, voluntary, and intelligent, ending the cap requirement does not change our understanding of that bedrock principle.

¶**20**      Likewise, the *Allen* framework does not suggest retroactive application is appropriate. Under *Allen*, we look to three factors to determine if a rule applies retroactively to final cases: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." *Allen*, 478 U.S. at 258 (citations omitted).

¶21 The purpose of the new standard is to clarify what information must be provided to protect a defendant's due process rights when pleading guilty. The State has relied on the *Lukens/Phillips/Crowder* restitution cap requirement since its pronouncement. Because restitution caps were included based on the understanding they were necessary to protect a defendants' due process rights but, as set forth above, were not actually enforceable, retroactive application is unlikely to threaten the finality of plea agreements. In a limited number of cases, however, where the defendant can show that the decision to accept the plea was induced by the restitution cap, retroactive application of this rule could threaten the finality of a plea agreement and have a burdensome effect on the administration of justice. In total, the *Allen* factors weigh against retroactive application of this rule.

¶22 The new rule of criminal procedure announced here does not meet either the *Teague* or *Allen* standards for retroactive application and will not apply retroactively to cases that have become final.

## C.      Victims' Attorneys Should Presumptively Be Before the Bar.

¶23 The VBR establishes victims' constitutional rights before and during criminal proceedings. Ariz. Const. art. 2, § 2.1. The Arizona Legislature has acted to further implement these rights. *See* A.R.S. §§ 13-4401 to -4443. A victim may hire an attorney to protect her rights. § 13-4437(A). A victim's lawyer "shall be endorsed on all pleadings and, if present, be included in all bench conferences and in chambers meetings and sessions with the trial court that directly involve a victim's right enumerated in article II, section 2.1, Constitution of Arizona." § 13-4437(D).

¶24 During a sentencing hearing, the superior court directed E.H.'s counsel to sit in the gallery unless invited into the well of the courtroom to address an issue relevant to E.H.'s rights. E.H. argues her personal counsel should be permitted to sit in front of the bar, in the space designated for the parties and their lawyers, during a hearing concerning her constitutional or statutory rights. We agree.

¶25 A trial court has the inherent authority to control the courtroom and trial proceedings. *Brown v. U.S. Fid. & Guar. Co.*, 194 Ariz. 85, 91 ¶ 33 (App. 1998). This discretion includes managing courtroom seating for the parties and their counsel in light of courtroom size, security concerns, and other practical considerations. But just as counsel to a party is generally accommodated in the well of the courtroom, a victim's counsel should presumptively be permitted to sit before the bar when a victim's constitutional or statutory rights are directly at issue in a court proceeding. Hearings involving rights that would raise this presumption include, for example, those listed in article 2, section 2.1 of the Arizona Constitution and found at A.R.S. §§ 13-810, -4421, -4422, -4423, -4426, -4427, -4435, -4437, -4440, and -4441. This presumption may be overcome by physical limitations within the courtroom, or, for instance, to allow for

physical distancing during a pandemic, or for other concerns about seating arrangements affecting the conduct of a fair hearing. At all times, however, a trial court's discretion to address seating arrangements must honor a victim's constitutional right to be present and heard at criminal proceedings and to be treated with fairness, dignity, and respect. Ariz. Const. art. 2, § 2.1(A)(1), (3)–(4).

## III.    CONCLUSION

¶26      Capping restitution in a plea agreement without a victim's consent violates a victim's right to full restitution. We overrule *Lukens*, *Phillips*, and *Crowder* for the principle that a specific amount of restitution or a cap is necessary for a defendant to make a voluntary and intelligent plea.

¶27      A victim's counsel has a presumptive right to sit in the well of the courtroom during a hearing involving a victim's constitutional or statutory right, subject to the physical limitations of a courtroom or other trial exigencies.

¶28      We vacate the cap on restitution available to E.H. and remand with directions to the trial court to allow the defendants the opportunity to move to withdraw from their plea agreements upon a showing that the inclusion of the cap on restitution was material and relevant to their decision to plead guilty. *See State v. Grijalba*, 157 Ariz. 112, 115 (1988); *State v. Villegas*, 230 Ariz. 191, 193 ¶¶ 6–7 (App. 2012).